Present: All the Justices

ROBERT WAYNE HICKSON, JR.

v. Record No. 982618    OPINION BY JUSTICE CYNTHIA D. KINSER
                                          September 17, 1999
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA


The defendant, Robert Wayne Hickson, Jr., was convicted of arson in a bench trial in the Circuit Court of Montgomery County.[1]  In an unpublished opinion, the Court of Appeals found sufficient evidence to support the conviction and affirmed the judgment of the circuit court.  We granted the defendant this appeal in which he again challenges the sufficiency of the evidence.  Because we conclude that the evidence fails, as a matter of law, to establish that the defendant was the person who committed the arson, we will reverse the judgment of the Court of Appeals.

FACTS

A mobile home in which Charles Michael Eastridge, Judith Eastridge, and Samantha Ray Thompson (the Eastridges) lived was destroyed by fire on August 10, 1995.

---

[1] The circuit court found the defendant guilty pursuant to Code § 18.2-77.  In pertinent part, that section prohibits the malicious burning of any dwelling house or manufactured home.  The court sentenced the defendant to five years incarceration, with three years and six months suspended.

Their home was located in Elliston, behind a post office, across railroad tracks, and near a river.  It was situated approximately one-half mile from Route 460 "[b]y the way a crow flies."

Norman Croy, a Deputy Sheriff Investigator with the Montgomery County Sheriff's Office, investigated the fire. Croy discovered a red gasoline container at the rear of the mobile home approximately six feet from the steps that led up to the porch.  Croy testified that the container smelled like gasoline and that a "minute amount" of gasoline remained in the container.  He also discovered a "flammable liquid pour pattern" on the wooden back porch steps and detected a gasoline odor in the soil underneath those steps.  Thus, Croy concluded that the fire started on those steps as a result of gasoline having been poured on them and ignited.[2]

According to Croy, when a fire, such as the one in the present case, is first ignited, there is a "flash" accompanied by a "[v]ery audible" "whooshing sound." However, he did not believe that the "whooshing sound" could have been heard from a distance of one-half mile.

_____

[2] Through his investigation, Croy ruled out possible accidental causes of the fire.

The Commonwealth's evidence linking the defendant to the fire was circumstantial. Gary Hall Spence testified that he and the defendant met at a campground in Radford on or about August 10, 1995. Spence stated, "To the best of my recollection I can't swear on the date." While at the campground, Spence heard the defendant say that somebody owed him money.

Spence and the defendant left the campground sometime between 8:30 p.m. and 9:00 p.m. and went riding around the Elliston area. At an unspecified time during their journey, the pair stopped at a house to look at the defendant's race car. When Spence was asked what they did after seeing the race car, he responded, "[W]e rode down on [Route] 460 I guess it was and stopped on the side of the road." After the defendant got out of the car, Spence "heard the trunk lid open." Spence did not know where the defendant went at that point, but Spence later heard an explosion and saw flames "[o]ff to [his] left hand side." After the defendant got back into the car, he and Spence returned to the campground. Spence testified that the defendant made some kind of reference to a fire.

On cross-examination, Spence admitted that he had a "pretty good buzz on" from the beer he had been drinking

3

earlier that night.  He stated, "I was drunk[.]  I can drink 12 beers and still not be drunk."

Michelle Nicole Price, a neighbor of the Eastridges, testified that, while she was walking her dog on the morning of the day that the mobile home burned, she observed a "white" car stop in front of the Eastridges' yard.[3]  She then heard someone yelling and thought that she also heard rocks being thrown at a sign.  Price believed that the individual was a man, but she could neither see what the person was doing nor hear what the individual was yelling.  She also thought that there was a second person in the car but could not ascertain whether that individual was a man or a woman.

STANDARD OF REVIEW

When, after being convicted of a crime, a defendant challenges the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the Commonwealth and accord the evidence all reasonable inferences fairly deducible from it.  Horton v. Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998).  Since the defendant in this case was convicted by a trial court sitting without a jury, the trial court's judgment is

4

entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is "plainly wrong or without evidence to support it." King v. Commonwealth, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977); Code § 8.01-680. However, "it is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true." Bland v. Commonwealth, 177 Va. 819, 821, 13 S.E.2d 317, 317 (1941).

## ANALYSIS

"Arson is a crime of stealth" and "[t]he proof is often necessarily circumstantial." Cook v. Commonwealth, 226 Va. 427, 432, 309 S.E.2d 325, 329 (1983). Circumstantial evidence in a case of arson, as in every criminal case, can support a conviction if it sufficiently excludes every reasonable hypothesis of innocence. Id. at 433, 309 S.E.2d at 329.

In a prosecution for arson, the Commonwealth must prove that "the fire was of incendiary origin and that the accused was a guilty agent in the burning." Augustine v. Commonwealth, 226 Va. 120, 123, 306 S.E.2d 886, 888 (1983).

---

[3] During the course of his investigation, Croy learned that Hickson was "associated" with a "white Chevrolet

The only issue in this appeal is whether the defendant was the "guilty agent."  Id.

With regard to this issue, the defendant argues that the evidence fails to "'point unerringly'" to him as the person who committed the arson.  Id. (quoting Poulos v. Commonwealth, 174 Va. 495, 499, 6 S.E.2d 666, 667 (1940)). He contends that the Commonwealth's evidence, which is entirely circumstantial, does not exclude every reasonable hypothesis of innocence and that the chain of necessary circumstances "of motive, time, place, means, and conduct [do not] concur to form an unbroken chain which links [him] to the crime beyond a reasonable doubt."  Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). Thus, he asks that his conviction be reversed.

In contrast, the Commonwealth argues that sufficient reasonable inferences flow from the evidence to prove that the defendant was the criminal agent in the arson.  These inferences, according to the Commonwealth, are that the defendant, on the morning of the arson, argued with someone at the Eastridges' home about money, later stopped at the spot on Route 460 nearest to the mobile home, retrieved a gasoline can from the rear of the car, walked the one-half mile to the Eastridges' home, and set it on fire.  The

Chevette."

Commonwealth contends that the testimony of Spence and Price provides a sufficient evidentiary foundation for these inferences.

After reviewing the evidence under the applicable standard of appellate review and considering the parties' arguments, we conclude that the circumstantial evidence in the present case with regard to "motive, time, place, means, and conduct" fails "to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt." Bishop, 227 Va. at 169, 313 S.E.2d at 393. We find numerous breaks in the chain that lead us to this conclusion.

First, although Spence testified that he heard the defendant state that somebody owed him money, Spence admitted that the defendant did not say anything more specific about that subject. The Commonwealth contends that the defendant argued with someone at the Eastridges' mobile home about money on the morning of the fire, but Price, the neighbor, did not identify the defendant as that person and could not hear the substance of what the individual was yelling.

Next, Spence could not "swear" as to the date that he and the defendant were riding around the Elliston area. Spence also only "guess[ed]" that he and Hickson were on

Route 460 when they stopped on the side of the road. Even if Spence was correct about the road number, he never specified the spot on Route 460 where they stopped. The evidence establishes that the point on Route 460 nearest to the Eastridges' mobile home was one-half mile away "[b]y the way a crow flies." So, assuming that they stopped at that point on Route 460, the defendant would have had to walk one-half mile to the Eastridges' home, pour gasoline on the steps, ignite it, and walk one-half mile back to the car. But, Spence did not state anything about the length of time that the defendant was gone after they stopped on the side of the road or how much time elapsed from when he heard the explosion until the defendant returned to the car. Furthermore, Croy doubted that the sound that would have been produced when this fire was ignited could have been heard one-half mile away.

Finally, Spence testified that he saw flames "[o]ff to [his] left hand side." However, the record contains no evidence establishing which direction Spence and the defendant were travelling when they stopped on Route 460. Thus, a trier of fact could not determine, without speculating, whether the flames Spence observed "[o]ff to [his] left hand side" originated in the area where the Eastridges' mobile home was located.

8

Thus, we conclude that the evidence in this case is insufficient as a matter of law to support the defendant's conviction. Accordingly, we will reverse the judgment of the Court of Appeals and dismiss the indictment.

<u>Reversed and dismissed</u>.