Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ.

TROY DYON TARPLEY

v.  Record No. 001183   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        March 2, 2001
COMMONWEALTH OF VIRGINIA

               FROM THE COURT OF APPEALS OF VIRGINIA

     The sole issue in this appeal of a grand larceny conviction

is whether the Commonwealth proved beyond a reasonable doubt the

defendant's criminal intent.

     Troy Dyon Tarpley was indicted for grand larceny in

violation of Code § 18.2-95.  He was accused of stealing an

automobile, which was the property of William J. Bruce, III.

Tarpley was convicted of the offense in a bench trial in the

Circuit Court of the City of Martinsville and was sentenced to

four years' imprisonment, with one year suspended.

     Tarpley appealed from his conviction to the Court of

Appeals, which affirmed the trial court's judgment in an

unpublished opinion.  Tarpley v. Commonwealth, Record No. 2890-

98-3 (April 25, 2000).  The Court held that the evidence of

criminal intent was sufficient to support Tarpley's conviction.

We awarded Tarpley an appeal limited to this issue.

     We will state the evidence in the light most favorable to

the Commonwealth, the prevailing party in the trial court.

Dobson v. Commonwealth, 260 Va. 71, 73, 531 S.E.2d 569, 570

(2000); Commonwealth v. Taylor, 256 Va. 514, 516, 506 S.E.2d 312, 313 (1998). On the evening of July 22, 1998, Bruce drove his 1996 Dodge Neon to the Villa Heights apartments in Martinsville, where he met Tarpley, Jose Piggot, and another acquaintance, Corey Hampton.[*] Bruce drove Tarpley, Piggot, and Hampton to Rivermont Apartments, where Tarpley had been residing temporarily, first with his mother and then with his girlfriend.

After arriving at the apartment complex, Tarpley and Hampton got out of the car while Bruce and Piggot remained inside. A group of between 10 and 15 persons had gathered in the area around Bruce's car. An unidentified member of this group reached into the car and "fussed at" Piggot, who was seated in the front passenger seat next to Bruce.

Bruce testified that he climbed out of the vehicle with the intent to move the person away from his car and told this unidentified person, "[T]ake that mess somewhere else, I don't need it around my car." Bruce immediately became involved in a fight but did not remember anything that happened afterward because he was "knocked unconscious." Bruce also testified that the value of his car was between $9,000 and $10,000, and that he had not given anyone permission to take it.

---

[*]Bruce testified that the fourth occupant of the car was named Mike, while Tarpley testified that this person was named Corey Hampton. In the balance of this opinion, we will refer to that person as Hampton.

2

Robert Smith, a resident of Rivermont Apartments who observed the fight, described the following events:

> Q. Tell the Court what was going on prior to the car being crashed[.]
> A. I came out and they were fighting. They was a right good distance from me and so I came down a little closer to it. I said, well, I'll stop here and then they beat this boy to [sic] it looked like he passed out and then two of them jumped in the car.
> Q. When you say they, what were they doing before they jumped into the car?
> A. They was into the fight.

When asked whether Bruce "got beat up by the boys that don't live in Rivermont Apartments," Smith answered, "Some of them." Smith testified that the two men who entered Bruce's car after Bruce was rendered unconscious "came out of the bunch that was fighting." Smith stated that after the first man was unsuccessful in his attempt to drive the car, the other man moved to the driver's seat and began to drive the car away from the fight scene at a high rate of speed. Smith observed this man drive the car farther into the complex to the end of the road before turning the car around and driving toward the exit to the complex. Smith noted that at this point, the car was moving erratically and hit some curbing, left the road, and "crashed" into some trees.

Tarpley testified on his own behalf and stated that he was not struck during the fight, and that he did not strike Bruce or Piggot. Tarpley also testified that he did not know the man who

3

"fussed at" Piggot and did not know the persons who attacked Bruce.

Tarpley stated that after Bruce was rendered unconscious, Piggot and Tarpley got into Bruce's car and Piggot attempted to drive the car away from the scene. According to Tarpley, Piggot drove Bruce's car "up on the [curb], like on the sidewalk," near the fight scene. Tarpley testified that Piggot then left the car and "took off running," and Tarpley moved into the driver's seat and drove the car away from the fight scene farther into the apartment complex. Tarpley next turned the car around and was driving toward the exit to the complex when he "[d]rove off of the hill" and "wrecked" the car.

When Tarpley's counsel asked him whether he stole Bruce's car, Tarpley responded, "I drove away[;] my intent wasn't to steal it." Tarpley testified that he drove the car away from the fight scene because he was afraid and was attempting to obtain help. When asked why he did not run home to call the police instead of taking Bruce's car, Tarpley stated that he was afraid to get out of Bruce's car, and that neither his mother nor his girlfriend had a telephone.

Tarpley also stated that he did not go to another apartment to call the police after driving farther into the apartment complex, because he still was not that far away from the fight scene, and was "trying to get away from the whole fight or

4

whatever."  Tarpley admitted that nobody was chasing him but testified that he was concerned that he might be in danger because the people who were "beating up" Bruce might "turn on" Tarpley.  Tarpley acknowledged during his testimony that he previously had been convicted of a felony and of misdemeanors involving moral turpitude.  At the conclusion of this evidence, the trial court found Tarpley guilty of grand larceny.

The Court of Appeals held that the evidence was sufficient to show that Tarpley intended to deprive Bruce permanently of his vehicle.  Tarpley, Record No. 2890-98-3, slip op. at 4.  In support of this conclusion, the Court stated:

> [T]here was credible evidence that [Tarpley] was involved in the fight in which Bruce was knocked unconscious.  Once Bruce was unconscious, [Tarpley] drove Bruce's car away from the scene at a high rate of speed.  [Tarpley] did not stop at any of the apartments to attempt to get help.  Instead, he drove for the exit to the apartment complex.

Id. at 3-4.

On appeal, Tarpley argues that the evidence is insufficient to convict him of grand larceny because it fails to establish his larcenous intent.  He contends that if he "committed any criminal act at all, it was unauthorized use of an automobile," in violation of Code § 18.2-102, by temporarily depriving Bruce of the use of his car.  Tarpley asserts that the evidence shows that he acted to remove himself from the scene of the fight, and that there is no evidence that he intended to keep the car once

5

he escaped from this position of danger.  Tarpley alternatively argues that while the Commonwealth would impute a criminal character to his acts, those arguments are based on speculation and raise only a suspicion of guilt.

In response, the Commonwealth argues that the Court of Appeals correctly concluded that the evidence is sufficient to establish that Tarpley intended to deprive Bruce permanently of his vehicle.  Tarpley was among the group of persons who were fighting and attacked Bruce and, although Tarpley denied striking Bruce, he drove away in Bruce's car after Bruce was rendered unconscious.  The Commonwealth emphasizes that the fact finder was not required to believe Tarpley's explanation for taking the car and was permitted to infer that he was lying to conceal his guilt.  The Commonwealth also contends that the issue whether a hypothesis of innocence is reasonable presents a question of fact, the resolution of which is binding on appeal unless plainly wrong.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must give the judgment of the trial court sitting without a jury the same weight as a jury verdict.  Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999); Taylor, 256 Va. at 518, 506 S.E.2d at 314.  The appellate court has the duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it

is plainly wrong or without evidence to support it.  Code § 8.01-680; Taylor, 256 Va. at 518, 506 S.E.2d at 314; Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).  However, the appellate court is equally obligated to set aside the trial court's judgment when it is contrary to the law and the evidence and, therefore, the judgment is plainly wrong.  Hickson, 258 Va. at 387, 520 S.E.2d at 645.

Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently.  Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); Taylor, 256 Va. at 518, 506 S.E.2d at 314; Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994).  Under Code § 18.2-95, grand larceny includes the taking, not from the person of another, of goods that have a value of $200 or more.  Stanley, 260 Va. at 96, 531 S.E.2d at 315; Taylor, 256 Va. at 518, 506 S.E.2d at 314.

A conviction of larceny requires proof beyond a reasonable doubt of the defendant's intent to steal, which must accompany his taking of the property.  Bryant, 248 Va. at 183, 445 S.E.2d at 670; Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977).  The element of criminal intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the defendant and any statements made

7

by him.  Stanley, 260 Va. at 96, 531 S.E.2d at 315, Taylor, 256 Va. at 519, 506 S.E.2d at 314.

Applying the above-stated standard of review, we conclude that the evidence is insufficient as a matter of law to establish Tarpley's larcenous intent at the time he drove Bruce's car away from the fight.  There was no evidence that Tarpley attacked Bruce during the fight or that he assisted anyone who struck Bruce.  Although the trial court was entitled to disbelieve Tarpley's account of the fight, the court received no evidence that Tarpley actually participated in the altercation.

The trial court also was entitled to disbelieve Tarpley's assertion that he did not intend to "steal" the car when he drove it away from the scene of the fight.  However, the trial court's rejection of that testimony does not provide a factual basis for establishing beyond a reasonable doubt that Tarpley intended to deprive Bruce of his car permanently, rather than temporarily.  The balance of the evidence showed only that he did not try to obtain help before attempting to leave the apartment complex, and that he drove Bruce's car for a very brief period of time.  Thus, the trier of fact could not determine, without speculation, that Tarpley intended to deprive Bruce of his car permanently.  Accordingly, we hold that the evidence viewed in the light most favorable to the Commonwealth

8

established only a suspicion or a probability of guilt and was insufficient as a matter of law to support the grand larceny conviction.  See Rogers v. Commonwealth, 242 Va. 307, 317, 410 S.E.2d 621, 627 (1991); Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990); Bishop v. Commonwealth, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984).

For these reasons, we will reverse the judgment of the Court of Appeals and dismiss the indictment.

Reversed and dismissed.