COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


MARIA JANINE CHERRY

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 3365-01-2          JUDGE ROSEMARIE ANNUNZIATA
                                          SEPTEMBER 30, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Cleo E. Powell, Judge

        William B. Bray (Perry & Bray, on brief), for
        appellant.

        Donald E. Jeffrey, III, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


    The sole issue on appeal is whether the evidence was

sufficient to prove larceny.  We affirm the conviction.

                               I.

    The grand jury indicted Maria Janine Cherry for larceny as a

third or subsequent such offense.  See Code §§ 18.2-96 and

18.2-104.  When the sufficiency of the evidence is challenged on

appeal, we "'review the evidence in the light most favorable to

the Commonwealth, granting to it all reasonable inferences

fairly deducible therefrom.'"  Ortega v. Commonwealth, 31

Va. App. 779, 786, 525 S.E.2d 623, 627 (2000) (quoting Archer v.

---

    [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (additional citation omitted)). So viewed, the evidence shows that Sheila Bishop was working before noon at the Quicky's Chevron gas station on Ironbridge Road where Cherry stopped at one of the gasoline pumps. When the computer indicated a cash purchase of gas, Bishop authorized the transaction by activating the pump.

Cherry pumped four dollars worth of gas, went to Bishop's cash register in the building, began "feeling her pockets, and [said] I don't have no money." Bishop testified that Cherry offered to leave her driver's license until she returned to pay but that she declined to take Cherry's driver's license. Instead, Bishop indicated the automobile's license plate number was sufficient, and she went outside and recorded Cherry's license plate number. Cherry said she would be back within an hour to pay for the gas. When Bishop gave the information to her employer, Bishop's employer told her that if Cherry did not return with payment in an hour, they would report the matter to the police. In the three and one-half hour period during which Bishop worked, Cherry did not return to the station to pay for the gasoline.

Police Officer Talley received a report from his dispatcher concerning a "gas drive off" at 11:30 a.m. at the Chevron station. The officer "responded to the residence [to] which the vehicle was registered a couple of hours later." After Cherry told the officer she had money to pay for the gas, he arrested her.

- 2 -

Cherry testified at trial and admitted she had a prior felony conviction and three misdemeanor convictions involving lying, cheating or stealing.  She explained that she believed she had money in her pants pocket when she went into the station to pay for the gas but that she "had changed out of [those] shorts and . . . didn't have the money in the pair [she] had on."  She said that she planned to return to the store to pay for the gasoline, but she did not return directly home to retrieve the cash she said was there and failed to return to the station.  She explained her failure to promptly return to the station, recounting her efforts to look for her boyfriend, who was working at a location between the Brandermill and Woodlake areas, in order to get money from him.  Cherry did not find him at his job site, and she continued to "dr[i]ve around looking for him."  While continuing the search, she stopped at the Lucky's store on Genito Road because she needed more gas.  She said that she thought the Lucky's store would cash a twenty-five dollar money order that she had with her, although she made no attempt to determine whether the station would do so before pumping sixteen dollars of gas.  Lucky's refused to cash the money order.  The clerk took Cherry's driver's license and permitted her to leave on the promise that she would return with the cash.  Cherry did not return home to retrieve the cash she said was there, but rather continued her search for her boyfriend, locating him after "about 45 minutes" at another job site, whereupon she drove with him to her residence, where she intended

to retrieve money from other clothing and to ask her roommate to cash the money order. She was at the residence for about five minutes when Officer Talley arrived and arrested her, approximately three and one-half hours after she had pumped the gasoline at the Chevron station and left without paying for it. She made no effort to contact the Chevron station during this period of time. Cherry testified that she intended to return to Quicky's Chevron to pay for the gas but the officer's arrival at her residence prevented her from doing so. When asked by the court to explain why she had not returned to the Chevron station within an hour, she explained she was under "a lot of stress" and was not thinking clearly.

At the conclusion of Cherry's testimony, the Commonwealth introduced evidence of two prior convictions to sustain the felony charge.

At the conclusion of the Commonwealth's evidence, the trial judge denied Cherry's motion to strike the evidence for insufficiency. She ruled that the "consent was conditioned upon [Cherry] returning within an hour" and that "at the expiration of the hour it became non-consensual." The trial judge also denied the motion to strike the evidence at the conclusion of the defendant's case. In ruling on the motion to strike, the trial judge considered the argument that Cherry had left the station with permission, conditioned on her agreement to return in an hour to pay for the gas, but concluded, ultimately, that Cherry's

explanation for her failure to return had not "rung true to the Court," and evidenced the fraudulent intent with which she took the gasoline without payment. After further argument at the sentencing hearing, the trial judge again addressed the inconsistencies between Cherry's conduct and her professed intent and added the following in support of her finding that the evidence was sufficient to sustain Cherry's conviction:

> [B]ased on the totality of the facts of this case, . . . I found that her intent at the time was not to pay them for their gas . . . . We did discuss the conditional provision of the gas station saying, okay, you don't have the money, come back in an hour, but her follow-through . . . proved her intent was not to do that.

(Emphasis added).

Cherry was convicted of petit larceny and sentenced to serve five years, with four years and six months suspended. Cherry appeals the conviction claiming the evidence is insufficient to prove her guilt beyond a reasonable doubt. We find no error and affirm.

## II.

"In Virginia, larceny is a common law crime." Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994).

> Larceny has often been defined as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently. The animus furandi must accompany the taking, but the wrongful

- 5 -

> taking of the property in itself imports the
> _animus_ _furandi_."

_Skeeter_ v. _Commonwealth_, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977) (citation omitted).  Cherry contends the evidence was insufficient to prove she intended to permanently deprive the owner of the gas and to prove a trespassory taking.

The trial judge found, however, that Cherry had no intent to pay for the gas when she obtained it at the pump.  This was a finding based upon the judge's assessment of Cherry's credibility.  Applying the usual standard on appeal, "the credibility of witnesses and the weight to be accorded their testimony are questions for the fact finder."  _Saunders_ v. _Commonwealth_, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991).  Viewed in the light most favorable to the Commonwealth, the evidence proved Cherry went to the gasoline station without money, pumped the gas into her car, and then explained to the clerk she did not have money to pay for the gas.  Although Cherry promised to return in one hour to pay for the gasoline, she failed to do so and failed to go directly to her residence where she said she had left her cash.  The trial judge was not required to believe her explanations for her conduct.  Indeed, the trial judge found that Cherry's conduct belied her stated intent to return to the station with payment for the gas, noting that Cherry's explanations had not "rung true to the Court."  The court thus concluded that Cherry pumped the gas without the present intent to pay for the gasoline,

notwithstanding Cherry's agreement to return within the hour to do so.  See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (stating that "the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt"). Based on the credibility determinations made by the trial court together with Cherry's failure to return with payment for the gas as she agreed, we find the evidence was sufficient to justify the trial judge's conclusion that Cherry had no intent to pay for the gas she pumped and, thus, committed a trespassory taking.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of petit larceny, third offense. Accordingly, we affirm the conviction.

Affirmed.

Benton, J., dissenting.

"Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001). "[U]nder the common law definition of that crime . . . there [must be] proof of a trespassory taking." Commonwealth v. Bruhn, 264 Va. 597, 601, 570 S.E.2d 866, 868 (2002) (citing Maye v. Commonwealth, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972)). Moreover, "[a] conviction of larceny requires proof beyond a reasonable doubt of the defendant's intent to steal, which must accompany his taking of the property." Tarpley, 261 Va. at 256, 542 S.E.2d at 764.

The trial judge found that Cherry's "intent at the time was not to pay [Quicky's Chevron] for the gas and [the judge said] that's why I convicted her of larceny." The evidence does not support this finding. The undisputed evidence establishes that Cherry went to the gas pump, pushed the "cash" button, and obtained the gas. She then went into the store, approached the clerk, and reached into her pocket for money. When Cherry informed the clerk she had left her money at home, she offered the clerk her driver's license to hold as security for her return. The clerk declined to take the driver's license, which provided the means of identifying Cherry, but noted Cherry's license plate number. Cherry was aware the clerk wrote down her license plate

- 8 -

number.  This evidence is insufficient to prove Cherry went to the store and obtained the gas with the intent to permanently deprive the owner of the gas.  Moreover, Cherry's conduct is simply inconsistent with a finding that she intended to steal the gas.

The trial judge's finding is based primarily on the view that Cherry did not return within an hour to pay for the gas.  The store clerk explained in the following testimony the significance of the one hour time span:

> And during my shift, there was a couple of people at the time that had gotten gas, and I had noticed a white [car], which the lady had came in and said that she didn't have no money.  And so I took her licensed plates, and I gave the information to my boss.  And she said she'd be back in an hour to pay for the gas.  And my boss says, well, if she's not back in an hour, then we have to turn her in as a drive off.

Although the trial judge was entitled to disbelieve Cherry's account of the events that consumed her time after she left the Quicky Chevron and to conclude as she did that Cherry lacked "follow-through," this evidence was insufficient to prove beyond a reasonable doubt Cherry intended to steal the gas when she put it in her car.  "[T]he trial [judge's] rejection of that testimony does not provide a factual basis for establishing beyond a reasonable doubt that [Cherry] intended to deprive [Quicky Chevron] of [gas] permanently."  Tarpley, 261 Va. at 256-57, 542 S.E.2d at 764.  The evidence proved Cherry did not drive away after pumping the gas.  She went inside to the

cashier, evidencing intent to pay. Cherry's offer to leave her license was inconsistent with intent to commit larceny. Furthermore, it was Cherry who made the offer to return within the hour, after she discovered she had no money. This was not a condition placed upon her by the owner for the obtaining of the gas. When, as here, the evidence viewed in the light most favorable to the Commonwealth establishes only a suspicion or a probability of guilt, that evidence is insufficient as a matter of law to support a larceny conviction. Id. at 257, 542 S.E.2d at 764.

In short, the evidence failed to prove beyond a reasonable doubt Cherry intended to steal the gas when she pumped it and clearly failed to prove a trespassory taking. Therefore, I would reverse the conviction.