COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


WILLIAM E. JONES
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2428-08-1                       JUDGE ROBERT P. FRANK
                                                         APRIL 28, 2009
DONNA M. JONES


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

Dawn B. DeBoer (Robert W. Partin; Locke, Partin, & DeBoer, PLC,
on briefs), for appellant.

Donna M. Jones, *pro se*.


William E. Jones (husband) appeals from a final decree of divorce from Donna M. Jones

(wife).  On appeal, husband contends that the trial court erred in finding that wife established by

clear and convincing evidence that an investment account with George McKelvey Co., Inc. (the

McKelvey account) and a parcel of real property in Onancock were gifts and were therefore

marital property.  Husband also contends that the trial court erred in finding that a Lincoln

automobile was marital property.[1]  For the reasons stated, we reverse and remand.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Husband also contends that the trial court erred in failing to provide a credit to husband
in the equity of the Onancock property based on contributions traceable to husband's separate
property; however, this question presented is not argued on brief.  See Jay v. Commonwealth,
275 Va. 510, 520, 659 S.E.2d 311, 317 (2008) (holding that the Court may treat a question
presented as waived if appellant does not comply with the requirements of Rule 5A:20(e)).
Appellant's failure to make any argument or cite any authority is significant.

BACKGROUND

The parties were married on July 17, 1999 and separated on September 24, 2005. No children were born of the marriage. While the record is quite lengthy as to the facts underlining tracing of husband's separate property, we will recite only those facts relevant to a determination of whether wife proved gifts from husband.

Prior to their marriage, husband owned properties in New Jersey that, when sold, generated substantial amounts of money. Those funds went through a number of other investments and accounts. Some of these funds ultimately were placed in the McKelvey account and were used to purchase the Onancock property.

Beginning in November 2000, husband's health had deteriorated, which husband characterized as a "shutdown" of his system. His organs were not properly functioning. Husband was hospitalized in August 2001 and had vision problems when he was discharged. This vision condition ultimately improved.

Because of his failing health, husband testified he put separate funds into one of two joint accounts at Commerce Bank so wife could pay the marital bills. Wife testified that the two Commerce Bank accounts "were for the both of us."

Husband testified he opened a joint account with wife at McKelvey because his doctor had told him that he would not live more than five years. Husband explained that if he should die, wife would be able to distribute those funds to husband's children from a prior marriage. Husband denied he had the intent to gift the investment account to wife. Wife's recollection of the McKelvey account was vastly different than husband's. She testified they both went to the stockbroker to open the joint account. Wife testified that both parties had access to that account with no restrictions placed on wife. According to wife, husband told her "it was our money to use for our future."

In March 2001, husband opened joint account #8568 at Commerce Bank in both his and wife's names. Wife also opened joint account #8633 with the same bank. Husband testified he was the primary owner of account #8568 and wife was the primary owner of account #8633. Husband testified he created this joint account (#8568) to enable wife to write checks because of his health issues and because husband jointly owned account #8633 at Commerce. Again, husband denied any donative intent.[2]

From the proceeds of the sale of the New Jersey property, husband deposited $815,000 into joint account #8568 with Commerce Bank and deposited $65,000 into joint account #8633 to pay family bills.

In February 2005, the parties purchased the Onancock property, containing approximately 3.3 acres, for $355,000. The parties borrowed $225,000 from Mercantile Bank, wife being liable on the note. That debt was secured by the McKelvey account. The property was held as a tenancy by the entirety.

Husband denied he intended to gift that property to wife, explaining the property was titled as a tenancy by the entirety merely as a requirement of the bank.

Wife testified husband told her the Onancock property would be their place of residence, stating, "it would be ours." However, the parties never lived together or built a dwelling on the Onancock property.

On cross-examination, husband indicated the Onancock property was part of his investment account. If he died, by having the property pass to wife, "it's easy to get the cash out." Thus, wife could sell the property upon husband's death and could distribute his estate.

---

[2] On cross-examination, husband testified he only put wife's name on his Commerce Bank account #8568 because of his health. By February 2002, his health had improved, but the account remained jointly held, and wife continued to pay family bills from that account. By July 2003, husband had the ability to write checks, but wife continued to do so.

According to husband's testimony, wife agreed that upon husband's death, the proceeds of the sale would be distributed by wife to husband's children from a former marriage.

Husband had earlier testified he began having marital problems in the spring of 2004, prior to titling the Onancock property in a tenancy by the entirety.

On further cross-examination, wife's counsel asked if the balance of the McKelvey account and the Onancock proceeds would all be distributed to his children, what remained for wife upon his death? Husband responded:

> I was planning on having that property in Onancock. I was planning on selling one lot off to pay off the loan. I had all the plans set up to – you know – to develop the property, so eventually there would have been a small house there, and there would have been a piece of property that was going to appreciate, and that's what Donna was going to participate in.

Husband testified he bought the Lincoln and titled it jointly in both his and wife's names. Again, he denied any donative intent. He explained that because wife was then working in Washington, D.C. and would be the primary driver, her name had to be on the vehicle's title for insurance purposes.

Husband also testified he had intended to gift the car to wife only if she had complied with her agreement to give her Nissan Pathfinder to husband's son. Wife did not do so. As a result, husband took the Lincoln from wife and returned the Pathfinder to her.

In rejecting husband's explanation of why he titled the various assets and accounts jointly, the trial court reviewed husband's history of acquiring and titling assets and concluded there was a pattern of giving from husband to wife.

The trial court did not believe that husband titled the Onancock property "for loan purposes." He also rejected husband's explanation that upon his death, wife would be able to

distribute the proceeds of the sale to husband's children. The trial court noted that upon husband's death, the property would belong solely to the wife.[3]

The trial court did accept wife's explanation of why the properties were gifted to her, finding that husband told wife those assets were hers as well as his. The trial court concluded:

> They fit the pattern of a person who has done these things for the purpose of persuading her that she was his wife and he was going to share with him; and the reason this property in Onancock is a gift is because of the fact that he told her it was a gift in all respects and made her understand that she was an owner of these properties; so consequently, the court finds that the real estate titled in joint – excuse me – titled in tenants by the entireties with the right of survivorship is marital property.

The trial court further found a pattern of husband telling wife, "This is your property." The trial court pointed to husband and wife going together to McKelvey to open the retirement account. The trial court indicated wife proved gifts by clear and convincing evidence.

The final order, entered September 11, 2008, made the following findings: 1) husband repeatedly over the years told wife that the assets and account were hers and he planned to share these assets with her; 2) husband adequately traced the assets; 3) the McKelvey account became a marital asset due to the gift from husband to wife; 4) the Onancock property is marital because it had been gifted by husband to husband and wife when he deeded the property as tenants by the entireties; 5) husband was awarded 60% and wife 40% of the marital estate; 6) wife was awarded $17,748 (vehicle) less $9,347 (half the value of her jewelry); and 7) husband was awarded the Lincoln automobile. This appeal follows.

## ANALYSIS

Husband argues that wife did not prove by clear and convincing evidence that husband gifted the Onancock property and the McKelvey account to her. On appeal, we review the

---

[3] Husband had some experience in real estate sales.

evidence in the light most favorable to wife, the party prevailing below. See, e.g., Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). Further, under Code § 8.01-680, we will not reverse the trial court's factual determinations on appeal unless they are "plainly wrong or without evidence to support" them. Congdon v. Congdon, 40 Va. App. 255, 261, 578 S.E.2d 833, 836 (2003). Thus, "if 'the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court.'" Id. at 266, 578 S.E.2d at 838.

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (citation omitted). See also Anderson, 29 Va. App. at 684-88, 514 S.E.2d at 375-77 (affirming the trial court's rejection of husband's tracing testimony). The trial court's classification of property is a determination of fact, and therefore, that classification will be reversed on appeal only if it is "'plainly wrong or without evidence to support it.'" Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005).

Code § 20-107.3(A)(3)(f) provides:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable[4] by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

A gift is "[a] voluntary transfer of property to another without compensation." Black's Law Dictionary 709 (8th ed. 2004). An inter vivos gift is "[a] gift of personal property made during the donor's lifetime and delivered to the donee with the intention of irrevocably surrendering control over the property." Id. at 710. While that definition applies to personal

---

[4] The issue of husband's tracing the transmuted property is not before us.

- 6 -

property only, the rationale is helpful in analyzing a purported gift of personal *or* real property. The act of retitling creates no presumption of a gift. Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003). Rather, the party seeking to establish a gift bears the burden of proving by clear and convincing evidence that the transfer was a gift.[5] Id. To establish a gift, the party must prove 1) the intention on the part of the donor to make the gift; 2) delivery or transfer of the gift; and 3) acceptance of the gift by the donee. Robinson v. Robinson, 46 Va. App. 652, 665-66, 621 S.E.2d 147, 154 (2005) (*en banc*) (citing Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)).[6]

Husband contends that the trial court found the property was gifted to wife merely because of the titling. The trial court considered the testimony of both husband and wife. Husband testified that he did not intend for the Onancock property, the Lincoln, or the McKelvey account to be gifts to wife. It is clear from the record that the trial court did not find husband's explanations credible. The trial court found that husband's intent was to gift those assets to wife. Intent is a question to be determined by the fact finder. See generally Fleming v.

---

[5] The term "clear and convincing evidence" is defined as

> that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.

Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)) (emphasis in original).

[6] Only husband's donative intent is before us. He does not challenge delivery or acceptance.

Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).  However, in this case, the trial court's findings are not supported by clear and convincing evidence in the record.

Wife testified that husband told her the Onancock property would be their place of residence, indicating, "it would be ours."  However, wife's assertions that the property would be their "residence" and "theirs" are equivalent terms, and neither implies a gift, but rather the use of the property.  Clearly, joint owners each enjoy the use of the jointly held property.  Wife testified that she and husband together chose paint, plantings, and decorations for the property, as it would be their home.  However, wife never said the property was a gift, and husband specifically denied donative intent.  Furthermore, the Onancock property never became the couple's place of residence.  In fact, husband and wife were already having marital difficulties when the Onancock property was titled.  On cross-examination, husband testified he intended to gift a small part of that property to wife later, subsequent to developing the other part of the property.  That development never occurred.

The entirety of wife's testimony is consistent with jointly held property, but it does not follow that the property was a gift.  The fact that husband titled the property as a tenancy by the entirety establishes only that husband and wife were joint owners of the property with survivorship.  Wife neither testified nor proved that the property was a gift.  Wife provides no clear and convincing evidence that husband gifted the Onancock property to her; i.e., that husband irrevocably surrendered control over that portion of the property transfer to wife.

Regarding the McKelvey account, the trial court erred in finding that husband's act of titling the account jointly and taking wife with him when he initially set up the account, sufficiently proved a gift from husband to wife.  Wife testified husband told her the McKelvey account "was our money to use for our future."  She was present when husband opened the

account, and she had use of the account. However, access to or use of the McKelvey account is just that. No gift necessarily follows from access or use. Any joint owner has access to and use of the account. Again, wife shows only that the account was jointly owned. Wife's testimony shows indications of joint ownership,[7] but her evidence does not prove a gift.

The trial court found that husband's actions were just following up on what he had orally told wife and that his action was part of a gift-making pattern of showing wife that his property was her property. However, wife never testified that the assets were gifts – nothing in the testimony she gave was sufficient to prove a gift by clear and convincing evidence, although she had many opportunities to do so.[8] Rather, wife's testimony established that she enjoyed access to and use of the assets – a hallmark of joint ownership.

Husband also contends that the trial court erred in concluding that the Lincoln vehicle was gifted to the marital estate. It is uncontroverted husband traced the Lincoln back to his separate property. Therefore, wife had the burden to prove, by clear and convincing evidence, that the husband gifted the Lincoln to her.

The trial court classified the Lincoln as marital property; by necessity, therefore, the court had to have concluded that the Lincoln was a gift. However, husband testified that he intended for the Lincoln to be a gift to wife only on the condition that wife pass her Nissan Pathfinder to husband's son. A condition is "a future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance." Black's, supra, at 312. In this case, the condition was not met.

---

[7] Ownership is "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others," and joint ownership is "[u]ndivided ownership shared by two or more persons." Black's, supra, at 1138.

[8] We do not suggest that simply because a party characterizes the transaction as a gift, that testimony is dispositive.

"If the evidence shows that the transferring spouse only had conditional donative intent, and the condition fails on the facts, a gift is not present." 1 Brett R. Turner, Equitable Distribution of Property § 5.44 (3d ed. 2005). Thus, because wife failed to meet husband's condition, there was no gift. Indeed, husband repossessed the Lincoln when wife failed to transfer her Nissan Pathfinder to husband's son.

Furthermore, wife never testified as to her understanding of why husband jointly titled the Lincoln. She never testified as to why husband allowed her to drive the Lincoln on her commute to and from Washington, D.C. The record does not support her contention that the Lincoln was a gift from husband. The trial court erred in making an award of $17,748, which was based on both the Lincoln and a truck.[9]

The trial court improperly concluded that wife proved the Onancock property, the McKelvey account, and the Lincoln vehicle were gifts from husband to wife. While we are mindful of the standard of review on appeal, we find that the evidence in the record does not support the trial court's findings.

Wife's evidence, even if accepted by the trial court, did not prove by clear and convincing evidence that husband intended to gift the subject assets to wife. Clearly, the trial court rejected husband's testimony and accepted wife's testimony. See Cirrito v. Cirrito, 44 Va. App. 287, 304, 605 S.E.2d 268, 276 (2004) ("The trial judge heard the testimony of the witnesses and observed their demeanor. At the conclusion of the evidence the court found that wife's testimony was not credible and husband's was."). It does not automatically follow, however, that wife proved the assets in question were a gift. The trial court was free to reject husband's evidence, but despite the fact that the trial court did not find husband's testimony

---

[9] The classification and distribution of the truck are not before us on appeal.

credible, the burden of proving a gift remained with wife.[10]  Granted, the trial court accepted

wife's testimony.  Nevertheless, we find as a matter of law that wife's testimony was insufficient

to prove a gift by clear and convincing evidence.

The trial court found that the cumulative effect of the evidence was clear and convincing

proof that husband intended for the Onancock property, the McKelvey account, and the Lincoln

to be gifts from husband to wife.  This finding is unsupported by the evidence.  Wife's access to

and use of these assets did not imply any donative intent on husband's part.  Wife's testimony

shows no clear and convincing evidence that husband intended to relinquish his interest.  Further,

a "pattern of giftmaking" is not the standard and is not clear and convincing evidence that

husband intended an irrevocable transaction or for the assets in question to be gifts to wife.

### CONCLUSION

We find error in the trial court's finding that the Onancock property, the McKelvey

account, and the Lincoln automobile were gifts from husband to wife.  These assets were not

gifts under the facts of this case, and husband successfully traced them to his separate property.

Therefore, we reverse and remand the case to the trial court to determine an equitable

distribution award based on the record and without considering the Onancock property, the

McKelvey account, or the Lincoln automobile.

Reversed and remanded.

---

[10] Cf. Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001), a larceny case in which the Court found that the trial court was entitled to disbelieve the appellant's testimony, but that rejection of appellant's testimony did not provide a factual basis to establish appellant's criminal intent beyond a reasonable doubt.