COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia


MELVIN LEE PAIGE, JR.

                                              MEMORANDUM OPINION* BY
v.        Record No. 0915-21-1         CHIEF JUDGE MARLA GRAFF DECKER
                                                     JUNE 21, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

(Kevin M. Diamonstein, on brief), for appellant.  Appellant
submitting on brief.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General; Susan Brock Wosk, Assistant Attorney General,
on brief), for appellee.


Melvin Lee Paige, Jr. appeals his conviction for abduction in violation of Code § 18.2-47.

On appeal, he challenges the sufficiency of the evidence to support his conviction.  For the reasons

that follow, we affirm.

I.  BACKGROUND[1]

On July 2, 2020, the appellant lived with his mother, Ibell Paige, in the City of Norfolk.

That day, the appellant's sister, Melvina Paige, was at the house helping Ibell.  Melvina left the

house and was walking to her car when she noticed eight-year-old K.B. holding three-year-old T.B.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In accordance with familiar principles of appellate review, we recite the facts in the
light most favorable to the Commonwealth, as the prevailing party at trial.  *Commonwealth v.
Herring*, 288 Va. 59, 66 (2014).

outside of the appellant's bedroom window at the side of the house.[2]  Melvina saw K.B. lift T.B. up toward the window and watched as the appellant reached out, grabbed T.B., and pulled her into his bedroom.  K.B. then "took off."  Melvina ran to the window and loudly asked the appellant "what is this little girl doing in your room?"  The appellant was standing next to the window, and T.B. was sitting on his bed looking like "she was kind of scared."  The appellant told Melvina that "this little girl's mother bring[s] the kids over here to clean my room."  Melvina went back inside the house and noticed that the appellant's bedroom door was closed.  When she opened the door, T.B. was still sitting on the bed, but the appellant was now standing by the door.  Melvina again asked why the little girl was in the appellant's bedroom, and he responded, "I told you, I told you."  Melvina left the house and began yelling for the girl's mother.  She also called the police.  When she went back to the house, the appellant was "gone."

Norfolk Police Officer Ryan Milliken was dispatched to the residence and found an agitated crowd of twelve to fifteen people outside.  Ibell answered the door and allowed Officer Milliken to enter.  Milliken went inside the house and did a "precursory sweep" of the residence.  As he walked through the house, Officer Milliken said three times, "Norfolk police.  If there's anybody inside the house, make yourself known."  No one responded.  Milliken then went outside and waited for backup officers.

Officer Cameron Harrell arrived and, along with Officer Milliken, conducted a second search of the house.  Officer Harrell repeatedly announced his presence and directed anyone who was there to "come out with your hands up."  Again, there was no response.  As the officers advanced through the house, the appellant came out of one of the bedrooms.  Harrell handcuffed the appellant and later transported him to the police department to speak with detectives.

---

[2] Melvina did not know the children, or their mother, and she had not seen them at the house on any prior occasion.

At the appellant's trial, Ibell testified that after Melvina came inside the house yelling, she saw T.B. standing in the appellant's bedroom with him. Ibell walked T.B. to the front of the house. She did not know K.B. or T.B. and had never seen them before. Ibell also testified that no one comes to her house to clean.

K.B. testified that on the day of the offense he was playing with his cousins and T.B. outside and then took T.B. to the appellant's house.[3] When they arrived, the appellant opened his bedroom window, and K.B. handed T.B. to him. According to K.B., he gave her to the appellant because she kept telling him that she was hungry, and he thought that he needed to buy her some food. K.B. explained, "I just had to get some money for her because I didn't want her to go home and tell my momma that I didn't feed her." After giving T.B. to the appellant, K.B. went to the Shop N Go to buy food for her and then returned to the appellant's house.[4] When he arrived back at the house, T.B. was coming out of the front door. K.B. testified that he had not met the appellant before that day and he had never been in the appellant's house.

Charnita Blount, the children's mother, was called to the appellant's residence as she was leaving work. When she arrived, she met with police officers and Melvina. Blount did not know the appellant, and he did not have permission to "pull [T.B.] through his bedroom window into his bedroom." She also did not give K.B. permission to leave T.B. with the appellant. Blount did not know the appellant and had never brought her young children to his house to clean it. Blount testified that she eventually concluded that K.B. had been inside the appellant's house before because he "was so specific about the way the inside of the house looked."

---

[3] K.B. and T.B. were being watched by a babysitter at a duplex nearby. They "went over [a] gate" and walked through a field to get to the appellant's house.

[4] On cross-examination, K.B. testified that he left T.B. with the appellant because he did not feel it was "safe" to take her to the Shop N Go.

Norfolk Police Detective Joshua Miller interviewed the appellant at the police station. The appellant told Miller he had known K.B. for two months. According to the appellant, he frequently gave K.B. money and would give him "guidance." He referred to K.B. as "little man" and "stickman." He explained that on the day of the incident, K.B. asked to borrow some money. K.B. also asked the appellant to watch T.B. while he went to the store. The appellant said he gave K.B. $20 and then "grabbed" T.B. and "that's when Melvina came in and observed the child." The appellant admitted that he "shouldn't have done it" and repeated over twenty times that "nothing happened."

At the close of the Commonwealth's case, the appellant moved to strike the evidence, arguing that the Commonwealth failed to prove the elements of the offense. The trial court denied the motion.

The appellant testified on his own behalf. He said that on the day of the incident he was in his bedroom when he heard a knock at the window. He "peeked through the blind" and asked who was there. He opened his window and saw K.B., who asked him for $2 and inquired if the appellant would watch T.B. while he went to the store. The appellant said "I don't have $2 but I do have a 20. You can get that." According to the appellant, he then told K.B. to give him T.B. and to "come straight back." The appellant testified that he was going to ask Ibell to watch T.B. He denied telling Melvina that the children came to the house to clean his room. The appellant, who was around forty-four years old on the date of the incident, further testified that he mentored K.B. for four or five months. The appellant said that his only purpose in taking T.B. into his bedroom was to help K.B. while he went to the store. On cross-examination, the appellant also explained that he never "got an opportunity" to actually give K.B. the $20.

At the close of the evidence, the appellant again moved the trial court to strike the evidence arguing that the Commonwealth did not prove the appellant's guilt beyond a reasonable doubt. The

trial court denied the motion and found the appellant guilty of abduction. It sentenced him to ten years, suspending five years and nine months of that sentence.

## II. ANALYSIS

The appellant argues that the evidence is insufficient to support his conviction for abduction.

In determining whether the evidence was sufficient to support a criminal conviction, an appellate court views the facts in the light most favorable to the Commonwealth. *See, e.g.*, *Commonwealth v. Herring*, 288 Va. 59, 66 (2014). This deferential standard requires the reviewing court to "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth." *Johnson v. Commonwealth*, 53 Va. App. 79, 99 (2008) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Vasquez*, 291 Va. at 249). This Court will affirm the decision unless the trial court was plainly wrong or the conviction lacks evidence to support it. *See, e.g.*, *Burkeen v. Commonwealth*, 286 Va. 255, 258 (2013).

Further, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder. *Redmond v. Commonwealth*, 57 Va. App. 254, 265 (2010). "In its role of judging witness credibility, the fact finder is 'entitled to disbelieve' a defendant's testimony." *Haba v. Commonwealth*, 73 Va. App. 277, 284 (2021) (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)). Upon review, "this Court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Pooler v. Commonwealth*, 71 Va. App. 214, 220 (2019) (quoting *Hamilton v. Commonwealth*, 69 Va. App. 176, 195 (2018)). Instead, the question is "whether '*any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Hamilton*, 69 Va. App. at 195).

We apply these well-established principles here in considering whether the evidence was sufficient to support the trial court's conclusion that the appellant was guilty of abducting three-year-old T.B. An abduction has three components. The first component is that a person, "without legal justification or excuse," took, transported, detained, or secreted the victim. Code § 18.2-47(A). The second component is that the act was accomplished through force, intimidation, or deception. *Id.* The third component is that the offender acted with the intent to deprive the victim of her personal liberty or "withhold or conceal" the victim "from any person, authority or institution lawfully entitled to [her] charge." *Id.* Whether an abduction occurred depends on the particular facts of each case. *Clanton v. Commonwealth*, 53 Va. App. 561, 574 (2009) (*en banc*). Here, the record supports the conclusion that the Commonwealth proved all of the elements of the offense beyond a reasonable doubt.

First, the evidence was sufficient to prove that the appellant, without legal justification or excuse, took, transported, detained, or secreted T.B. Melvina testified that she saw K.B. handing T.B. to the appellant through his bedroom window at the side of the house. T.B. looked scared when she was in the room. After Melvina saw the appellant grab T.B. and pull her through the window, Melvina went inside and noticed that the appellant's bedroom door was closed, concealing T.B.'s presence. When Melvina went into the bedroom, T.B. was on the appellant's bed, and the appellant had moved from the window to near the door. Melvina did not know either of the young children, and she had never seen them at the house before. When she asked why three-year-old T.B. was in the appellant's bedroom, he responded that the children's mother brings the children to clean his room. However, their mother was not present at the time T.B. was handed to the appellant. Further, Ibell had never seen K.B. or T.B. before that day, and she denied that anyone

ever comes to her house to clean it.[5]  Additionally, Blount, the children's mother, testified that she neither knew the appellant, nor did she allow her children to clean his room.  She also testified that she did not give the appellant permission to take T.B. into his bedroom.  These facts sufficiently proved that the appellant seized, took, detained, or secreted T.B. without legal justification or excuse.

Second, the Commonwealth's evidence was sufficient to prove that the appellant accomplished the act through force, intimidation, or deception.  The trial court considered all of the conflicting testimony and concluded that the appellant deceived K.B. into giving T.B. to him in exchange for a promise of money.  *See Peters v. Commonwealth*, 72 Va. App. 378, 386-87 (2020) (noting that it is the responsibility of the trier of fact to resolve all conflicts in the testimony).  The court also found that the appellant used intimidation to detain T.B.  Eight-year-old K.B. testified that even though he had never met the appellant before, he put T.B. in the appellant's bedroom.  K.B. said that he was desperate for money in order to feed his little sister.  The appellant testified that he offered K.B. $20 to take to the store but admitted that he did not actually give the money to him.  Viewed in the light most favorable to the Commonwealth, this evidence supports the inferences that the appellant promised young K.B. money if he left T.B. with him and that K.B. complied because he was anxious to buy her something to eat.  *See generally Breeden v. Commonwealth*, 43 Va. App. 169, 177 (2004) (explaining that circumstantial evidence is as competent as direct evidence and is entitled to the same weight).  Consequently, the record supports the trial court's finding that the appellant accomplished the act through intimidation or deception.  *See Herring*, 288 Va. at 75 (holding that the evidence supported a finding that the appellant used intimidation to accomplish the abduction).

---

[5] Notably, it defies logic and reason that an eight year old and three year old would be sent to clean a stranger's home.

Third, the evidence supports a finding that the appellant acted with the intent to "withhold or conceal" T.B. from a person lawfully entitled to her charge. "Intent is the purpose formed in a person's mind and . . . frequently is[] shown by circumstances[,]" including "[his] conduct" and "his statements." *Chatman v. Commonwealth*, 61 Va. App. 618, 630 (2013) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). Melvina's testimony established that the appellant pulled T.B. through a window into his bedroom. The appellant's bedroom door was closed, concealing T.B.'s presence even from others inside the house. T.B.'s mother did not know the appellant or give him permission to take T.B. into his bedroom. Viewed in the light most favorable to the Commonwealth, this evidence supports the trial court's conclusion that the appellant intended to withhold or conceal T.B. from her mother. *See generally Herring*, 288 Va. at 76 (holding evidence supported finding of intent).

Finally, the appellant's inconsistent statements are indicative of his guilt and support the trial court's conclusion that he abducted T.B. *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (explaining that a defendant's false statements are probative that he has lied to conceal his guilt). The appellant told Detective Miller that he agreed to watch T.B. while K.B. went to the store, but he then testified at trial that he intended to ask Ibell to supervise the child. The appellant also told Miller that he gave K.B. $20, but then testified at trial that he did not do so. The appellant explained to Detective Miller that he knew "little man" for only two months, but he testified at trial that he "mentored" K.B. and regularly gave him money for four or five months. The appellant first offered what he suggested was an innocent explanation for his actions, but then admitted that he was wrong to do what he did. The trial court, as the trier of fact, had the appellant's statements to the police and testimony before it and was entitled to weigh it along with all of the other evidence. This authority includes determining credibility and weighing his "self-serving testimony." *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App.

- 8 -

505, 509 (1998)).  Further, the appellant's initial efforts to hide and his refusal of the officers'

repeated requests to reveal his presence when they were inside the home suggests an attempt to

conceal himself and avoid arrest, further evincing his guilty conscience.  *See Palmer v.*

*Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[T]he fact of an accused's . . . concealment . . .

and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself."

(quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))).

Based on this record, the facts, along with the reasonable inferences drawn from them,

proved each of the elements of abduction beyond a reasonable doubt.  The trial court's ruling is not

plainly wrong or without evidence to support it.

### III.  CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, was sufficient to

prove that the appellant used deception or intimidation, without legal justification or excuse, to

seize, take, detain, or secrete three-year-old T.B. with the intent to withhold or conceal her from a

person lawfully entitled to her charge.  Consequently, we affirm the appellant's conviction for

abduction.

*Affirmed.*