COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


FRANCISCO ORTEGA
                                      OPINION BY
v.    Record No. 1867-98-4    JUDGE JAMES W. BENTON, JR.
                                    MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Donald M. Haddock, Judge

        George J. Wooditch (Office of the Public
        Defender, on brief), for appellant.

        Eugene Murphy, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     The trial judge convicted Francisco Ortega of five counts

of burglary and five counts of grand larceny and acquitted him

of burglary while armed.  On appeal, Ortega contends (1) the

trial judge erred in admitting evidence of his prior crimes and

(2) the evidence was insufficient to prove beyond a reasonable

doubt his identity as the burglar.  For the reasons that follow,

we affirm Ortega's convictions.

                              I.

     Between January 6 and 20 of 1998, six burglaries occurred

in the Del Ray and Rosemont sections of the City of Alexandria.

Detective Barry Schiftic testified that the burglaries had

numerous similarities.  All the burglaries occurred during the

daytime at residences; each residence was extensively ransacked; similar items, particularly electronic equipment and jewelry, were stolen from each residence; the burglaries all occurred within a one-mile radius of one another; each burglary occurred on a Tuesday or a Wednesday in the morning or early afternoon; each residence, except one, was entered by force; and in each residence the burglar took sharp knives from the kitchen and left them in other rooms. The detective also testified that, historically, only thirty percent of the burglaries in Alexandria have been residential, that the ransacking of a residential burglary site is highly unusual, and that, contrary to the typical residential burglary, no silverware, silver trays, candle sticks, or rugs were taken, although those items were present in most of these residences. He further testified that the moving of knives from the kitchen to another room was highly unusual and that one of the knives, which had been stolen from one residence, was left at another residence.

In addition, the detective testified, over objection, that he had investigated a series of burglaries in 1994 which involved a strikingly similar pattern. He described those earlier burglaries as having the following pattern:

> Back in 1994 . . . we handled a series of burglaries . . . , and the same type of items were taken. The same mode of operation, a person going through the rear of the home, incorporating the glass or the door. They go in, and these homes were located in the Del Ray/Rosemont area also.

They occurred during the daylight hours. Entry was forced. The ransacking was the same. There was more ransacking, again, with these than I had ever seen before, and the same types of items were taken, electronic equipment, things of that kind. . . . [K]nives were left throughout the houses on these different cases.

In addition, one of the homes burgled in 1994 was also burgled in 1998. The detective also testified that Ortega was arrested and convicted for the 1994 burglaries.

Carolyn Duncan, who lives in the area where the burglaries occurred, testified that at noon on January 20, which was the day the last burglary occurred, she answered a knock at her door and saw two men. During her testimony, she identified Ortega as the man who was at her door and asked "if Miranda was home." When she told him that no such person lived there, he mentioned a street name. She then directed him to that street; however, the men walked away in another direction. The next day, after she learned of the burglary that occurred a block away, she called the police and described the men to Detective Schiftic. One day later, the detective showed her a photograph spread that did not contain Ortega's photograph. In April, however, she saw another photographic spread and selected Ortega's photograph as the person who was at her door on January 20.

Keith Davis testified that he and Ortega committed the burglaries. He has known Ortega for almost nine years and, at the time of the burglaries, they lived together at Davis'

grandmother's house. Davis described in detail each of the five burglaries and the property they took from each house. After each burglary, they took the property to Davis' grandmother's home.

Charles Clark testified that in January 1998 he saw Davis and Ortega carrying televisions and jewelry into Davis' grandmother's house. In court, he identified some jewelry taken during one of the burglaries as jewelry he saw in Davis' and Ortega's possession. Clark also testified that in January 1998 he had seen a jacket that was taken during one of the burglaries and that at Davis' request he had pawned some of the stolen items.

The trial judge convicted Ortega of the five burglaries and the five larcenies. He sentenced Ortega to twenty years in prison with ten years suspended.

## II.

Ortega contends the evidence concerning the 1994 burglaries was inherently prejudicial and served only to prove criminal propensity. The Commonwealth argues that the evidence was properly admitted to prove identity.

"Evidence that shows or tends to show a defendant has committed a prior crime generally is inadmissible to prove the crime charged." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). "This is because such evidence confuses one offense with the other, unfairly surprises the defendant

with a charge he is unprepared to meet, and, by showing that the [defendant] has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial."  Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

Although evidence of other crimes is not admissible when offered merely to show the accused's propensity for such crimes or acts, see Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), it is admissible when it is "relevant to an issue or element in the . . . case."  Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985) (citation omitted).

> Thus, evidence of other crimes is allowed when it tends to prove motive, intent, or knowledge of the defendant.  Among other exceptions, evidence of other crimes also is allowed if relevant to show the perpetrator's identity when some aspects of the prior crime are so distinctive or idiosyncratic that the fact finder reasonably could infer that the same person committed both crimes.

Guill, 255 Va. at 138-39, 495 S.E.2d at 491 (citations omitted).

When offered to prove identity, the prior crime does not have to be a "signature" crime; however, it must show "'a singular strong resemblance to the pattern of the offense charged.'"  Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616 (1990) (citation omitted); see also Chichester v. Commonwealth, 248 Va. 311, 448 S.E.2d 638 (1994), cert. denied,

513 U.S. 1166 (1995). The identify of the burglar was at issue in this case.

The detective described a series of similarities among the 1998 burglaries. In addition, his testimony proved that those same similarities existed between the 1994 and 1998 crimes. Significantly, the evidence proved that in each burglarized home knives were taken from the kitchen and put in other rooms. This was a highly unusual circumstance that was common to each burglary and was "sufficiently idiosyncratic to admit an inference of pattern for purposes of proof." Spencer, 240 Va. at 90, 393 S.E.2d at 616. From this evidence, the fact finder could reasonably infer that the same person had committed both crimes. See id.

Ortega pled guilty to his involvement in the 1994 burglaries, each of which contained "a strong resemblance to the pattern of the offense charged in this trial." Id. Thus, evidence in the 1994 crimes was probative and relevant. We hold, therefore, that the trial judge did not err in admitting the evidence.

Ortega also argues that the evidence concerning the 1994 burglaries should not have been admitted because other persons were known to have been involved in those crimes. The detective testified that Keith Davis, Carlton Davis, and Ortega were suspects in the 1994 burglaries. Although Keith and Carlton Davis were implicated in the prior burglaries, the evidence

proved that Ortega was also a perpetrator in those burglaries. While the evidence does not definitively establish that Ortega, rather than one of the Davises, was the person who moved the knives, Ortega's presence at both the 1994 and the 1998 burglaries is a sufficient connection between the two sets of crimes to permit "the fact finder [to] reasonably . . . infer that the same person committed both crimes."  Guill, 255 Va. at 139, 495 S.E.2d at 491.  "We cannot say that the trial court abused its discretion in concluding that the prejudicial effect of admitting evidence of [Ortega's] involvement in the [1994 burglaries] was outweighed by the probative value of that evidence."  Chichester, 248 Va. at 328, 448 S.E.2d at 649.

                                III.

When the sufficiency of the evidence is challenged on appeal, we "review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  So viewed, the evidence proved that five burglaries occurred within a fourteen day period and within a one-mile radius of each other.  Clark identified several of the stolen items and testified that he saw Davis and Ortega with those items shortly after the burglaries.

Duncan, who lives one block away from the house where the last burglary occurred, identified Ortega as one of two men who

knocked on her door the day the burglary occurred.  Although

Ortega contends that Duncan's identification of him was the

result of an unduly suggestive procedure, the evidence does not

support his argument.

> The factors to consider in determining
> reliability are:  (1) the witness'
> opportunity to view the criminal at the time
> of the crime; (2) the witness' degree of
> attention; (3) the accuracy of the witness'
> prior description of the criminal; (4) the
> level of certainty demonstrated by the
> witness at the confrontation; and (5) the
> length of time between the crime and the
> confrontation.

Charity v. Commonwealth, 24 Va. App. 258, 262-63, 482 S.E.2d 59,

61 (1997).

Duncan spoke with Ortega for three minutes and could see

him clearly as they spoke.  The next day, she described him to

the detective.  Two days after the event, Duncan viewed a group

of photographs, which contained a photograph of Ortega's

brother.  Duncan said that the photograph of Ortega's brother

"looks the most like him"; however, she said he was not the

person she saw.  Several months later, when Duncan was shown

another photograph spread containing Ortega's photograph, she

identified Ortega as the man who came to her door.  Because

Duncan apparently recognized similar features in Ortega's

brother and later identified Ortega, the identifications support

rather than detract from the conclusion that Ortega was in the

neighborhood when the burglary occurred.

Although Duncan initially told the detective that the man at her door was five feet, ten inches tall, which is two and one-half inches taller than Ortega, that discrepancy is not sufficient to undermine her positive identification. The facts in totality establish the reliability of the identification. See id.

In addition, Davis testified that he and Ortega committed the five burglaries. Davis identified the houses and explained in detail how he and Ortega gained entry, what items they stole, and how they disposed of them. He explained that before deciding whether to burglarize a house, they would knock on the door to determine whether the residents were at home. That conduct was consistent with Duncan's testimony.

The evidence also proved that property taken during the 1998 burglaries was found at Davis' residence and in a pawn shop. After Ortega's arrest, no burglaries occurred involving a similar pattern.

Although Davis' testimony must be considered with caution because he is also implicated in the crimes, given the other corroborating evidence, his testimony was sufficiently reliable to prove Ortega's guilt. See Allard v. Commonwealth, 24 Va. App. 57, 63, 480 S.E.2d 139, 142 (1997) (noting that sufficient evidence corroborated the codefendant's testimony to prove the defendant was present at the scene of the crime). Indeed, a defendant "may be convicted upon the uncorroborated testimony of

an accomplice."  Johnson v. Commonwealth, 224 Va. 525, 527, 298

S.E.2d 99, 101 (1982).

Accordingly, the evidence was sufficient to prove beyond a

reasonable doubt that Ortega was guilty of the five burglaries

and the five grand larcenies.  We affirm the convictions.

Affirmed.