*651 ANNUNZIATA, Judge.
A jury convicted Samudio-Perez of rape and sentenced him to serve six years in the penitentiary.[1] On appeal, he contends the trial judge erred in denying his midtrial motion for a mistrial arising from a juror’s prior relationship with one of the detectives assigned to the case. For the following reasons, we affirm.

Background

On appeal, we view the facts in the light most favorable to the Commonwealth, the party prevailing below, together with all reasonable inferences fairly deducible therefrom. See Ortega v. Commonwealth, 31 Va.App. 779, 786, 525 S.E.2d 623, 627 (2000). Viewed accordingly, the evidence shows that Walter Sorto was called as a prospective juror for SamudioPerez’s trial in October 2001. The prosecutor asked the prospective jurors if any of them or a family member had been the victim of a sexual assault. Sorto told the court his nephew had assaulted his daughter four years earlier. After the prosecution informed Sorto the case did not involve sexual assault within a family, Sorto indicated he could be fair to both sides. Defense counsel did not ask Sorto any questions and did not move to strike him for cause. The court impaneled the jury, including Sorto, and counsel gave opening statements. After a short recess, the judge discovered that a detective in the case, David E. Moore, had investigated the case involving Sorto’s daughter.[2] Sorto had not recognized Detective Moore during opening statements. The judge brought Sorto into the courtroom and counsel questioned him about his relationship with Detective Moore:
*652 THE COURT: Mr. Sorto, over break, it came to my attention that Detective Moore, who is involved with this case, may have been involved with yonr daughter’s case.
MR. SORTO: That’s right.
THE COURT: Has that come to your recollection?
MR. SORTO: I was actually — I didn’t see him sitting right there. But later on, when we were talking, I saw him right there.
THE COURT: Now that you’ve come to that realization that he is the same one, how does that affect your feeling about the case?
MR. SORTO: It doesn’t really affect me at all. I’ve been through this. He was professional.
THE COURT: Did you talk to Detective Moore in the course of the investigation of your daughter’s case?
MR. SORTO: Yes, I did.
MS. SWART: Mr. Sorto, in your dealings with Detective Moore — we’re not asking if you liked him or disliked him as a person or anything like that. In this case, as I told you in opening statements, he’s going to be testifying as to the entire interview with this defendant. Are you going to be able to set aside your personal experience with Detective Moore with your daughter’s case and listen to the whole statement and assess his credibility, what he says, on what he says here today?
MR. SORTO: Basically, whatever comes here right now— comes up right now is basically what I have to decide. I’m not going to through [sic] anybody’s judgment.
MS. SWART: That’s all the questions I have.
THE COURT: All right, Mr. Finch. Do you have any questions?
MR. FINCH: One or two. Sir, you had a phone sting that was done in your house with Detective Moore?
MR. SORTO: That’s right.
MR. FINCH: He conducted it?
MR. SORTO: That’s right.
*653 MR. FINCH: So you got to know each other a little bit. If it was his word against somebody else’s, wouldn’t you favor Mr. Moore’s word?
MR. SORTO: Not at all. It comes to my mind that if I’m here, as she mentioned right now, just basically whatever is proved or any other type problems that comes up [sic], that’s basically it. See, I don’t see Mr. Moore as somebody who’s going to interrupt [sic] this kind of situation. I mean, he’s been through my case and I know him basically for that particular occasion, but that’s it.
MR. FINCH: But you were favorably impressed with him?
MR. SORTO: Well, I can’t say that right now. I can’t say he was favorable or not. But I haven’t heard anything yet to say, you know, of anything [sic]. I don’t know.
MS. SWART: Did you have a favorable impression of Detective Moore from that incident [his daughter’s investigation]? Not now, but back then?
MR. SORTO: From that particular incident, I did. He was a very professional man for that particular case. We should believe he did a great job personally on that case [sic]. I don’t know about this. So I can’t say anything right now.
MS. SWART: Today, when he raises his right hand and swears to tell the truth, in your mind are you going to sit there and say, whatever he says is going to be the truth or are you going to sit and listen to his while testimony and try to figure it out then?
MR. SORTO: Well, I’d rather say listen to the testimony than rather say something else.
THE COURT: All right. Thank you, sir. You may go back to the jury room.
Defense counsel moved for a mistrial based on Sorto’s prior relationship with Detective Moore.[3] The judge denied the *654 motion, stating “I just can’t conclude that he’s got any kind of a bias or pre-disposition one way or another.”
During the investigation, Detective Moore was not the lead investigator on the case, however, he interviewed SamudioPerez because he speaks Spanish, Samudio-Perez’s native language. Detective Moore did not record Samudio-Perez’s statements and relied only on his notes from the interview for his testimony. Detective Moore testified that Samudio-Perez made an incriminating statement to him, specifically noting Samudio-Perez’s admission that the sexual encounter between Samudio-Perez and the victim occurred without her consent. On direct examination, Samudio-Perez denied making the incriminating statement to Detective Moore and stated Moore suggested he write a letter to the victim. Samudio-Perez wrote the letter, which also incriminated him.

Analysis

I. Standard of Review
Samudio-Perez’s appeal comes to us on a denial of a motion for a mistrial. Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court’s ruling was prejudicial. See Taylor v. Commonwealth, 25 Va.App. 12, 17, 486 S.E.2d 108, 110 (1997) (citation omitted).[4] We turn now to the substantive issues presented.
*655 II. Denial of Motion for Mistrial
Under the standard of review set forth above, the party moving for mistrial, in this case, Samudio-Perez, has the burden of establishing a manifest probability of prejudice. See Taylor, 25 Va.App. at 17, 486 S.E.2d at 110. To determine if a trial court’s denial of a motion for a mistrial was prejudicial, when a juror’s conduct is at issue, we must look to the juror’s possible bias. The existence of an individual juror’s possible bias or partiality is a question of fact to be determined by the trial court. See Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099, 106 S.Ct. 1503, 89 L.Ed.2d 903 (1986). Additionally, “[i]t is well settled that the credibility of witnesses [and] the weight accorded witnesses’ testimony ... are matters that are within the province of the fact finder.” Brown v. Commonwealth, 25 Va.App. 171, 192, 487 S.E.2d 248, 258 (1997) (citing Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986)).
The trial court was in the best position to consider Sorto’s response to counsel’s questions and resolved the issue of possible bias in favor of Sorto and the Commonwealth. Sorto repeatedly informed the court he was able to address the issues impartially and stated he would not favor Detective Moore’s testimony over another witness’ testimony. Furthermore, Sorto stated he could not determine if Detective Moore had conducted himself professionally in the case at bar until he considered the evidence. After further questioning of Sorto by counsel, the trial judge made a finding of fact that Sorto could be a fair and impartial juror, stating she could not conclude “[Sorto]’s got any kind of a bias or pre-disposition one way or another.” Viewing this evidence in the light most *656 favorable to the Commonwealth, we find there was no “manifest probability” that the denial of a mistrial was prejudicial to Samudio-Perez. See Lilly v. Commonwealth, 255 Va. 558, 499 S.E.2d 522 (1998), rev’d on other grounds, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).
Samudio-Perez further argues that, if we find Sorto could have been stricken for cause, then the denial of the motion for a mistrial should be reversed. In determining a juror’s possible bias, we may consider whether the juror could have been stricken for cause. See Taylor, 25 Va.App. at 18, 486 S.E.2d at 111. When there are no grounds to strike a juror for cause, the juror’s presence on the jury will not affect the essential fairness of a trial and, therefore, we cannot find that prejudice exists. See id.
In the case at bar, as we have noted, the trial court found as fact that Sorto was a fair and unbiased juror. Thus, no ground for a strike for cause was established. Moreover, Sorto’s relationship with Moore does not establish a per se disqualification of Sorto as a juror under Virginia law. See Clozza v. Commonwealth, 228 Va. 124, 135, 321 S.E.2d 273, 279 (1984) (holding a prospective juror is not subject to “automatic exclusion because of an association with law enforcement”). We have long held that a juror’s relationship to a witness does not require his dismissal per se. See Lilly, 255 Va. at 569-70, 499 S.E.2d at 531. In Lilly, the Supreme Court evaluated the propriety of seating a juror who had a prior relationship with a police officer witness and stated: “A juror’s relationship to such a police officer witness does not require per se dismissal of that juror from the venire, and the juror may be retained if the trial court is satisfied that the juror can set aside considerations of the relationship and evaluate all the evidence fairly.” Id. at 570, 499 S.E.2d at 531. Given these principles and the trial court’s conclusion that Sorto could set aside his prior relationship with Detective Moore and evaluate the evidence fairly and impartially, we find that Samudio-Perez’s grounds for reversal of the trial court’s denial of his mistrial motion are without merit.
*657 Samudio-Perez finally argues that permitting Sorto to remain on the jury would erode public confidence in the integrity of criminal trials. To support his argument, Samudio-Perez relies on several recent cases, decided by the Virginia Supreme Court, in which the court determined that “ ‘[p]ublic confidence in the integrity of the process is also at stake,’ ” when a juror’s selection is questioned, and is a factor to consider in determining whether a potential juror should be seated.[5] Cantrell v. Crews, 259 Va. 47, 51, 523 S.E.2d 502, 504 (2000); see also Barrett v. Commonwealth, 262 Va. 823, 553 S.E.2d 731 (2001); Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000).
In Cantrell, a juror was a client of a law firm representing one of the parties at trial. Although the trial court determined that the juror could be fair to both sides, the Supreme Court reversed the trial court’s decision, stating, “[Public confidence in the integrity of the process] cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation____” Cantrell, 259 Va. at 51, 523 S.E.2d at 504.
The Supreme Court addressed the issue again in Medici, a case in which a potential juror’s husband had been murdered and the person accused of his murder was represented by the same public defender’s office as Medici, the defendant. The juror stated she could judge the evidence fairly and impartially and she was impaneled. The Supreme Court reversed and held the trial court erred in not striking the juror for cause, concluding that “permitting her to sit as a juror, in the circumstances of this case ... weakened] public confidence in *658 the integrity of criminal trials.” Medici 260 Va. at 227, 582 S.E.2d at 31.
Finally, the Supreme Court underscored the importance of safeguarding public confidence in jury selection in Barrett, where a prospective juror’s brother was a police officer who would testify for the Commonwealth during the trial. The trial court found the juror could be fair and impartial and denied Barrett’s motion to strike the juror for cause. The Supreme Court reversed the trial court’s decision, stating:
Our consideration of prospective juror Wade’s answers gives us no reason to question the honesty and sincerity of his determination to discharge his duties as juror in an unbiased manner----However in [Medici and Cantrell] ... we recognized that in constituting the jury panel, “[pjublic confidence in the integrity of the process” is also “at stake.” ... In the recited circumstances of this case we think that a refusal to strike the prospective juror for cause makes it unlikely that the public would have confidence in the judicial process.
Barrett, 262 Va. at 826-27, 553 S.E.2d at 733 (citations omitted).
Citing these principles, Samudio-Perez contends the relationship between Sorto and Detective Moore “creates the perception that the integrity of the [judicial] process is at stake” and that permitting Sorto to remain on the jury would “weaken the public confidence in the integrity of criminal trials.” We disagree.
All the challenged jurors in Cantrell, Medici, and Barrett had in common a contemporaneous and continuing relationship with legal counsel or a witness in the case. By contrast, Sorto had a single contact with Moore four years earlier, but had no contemporaneous or continuing relationship with him. Thus, Sorto’s prior “relationship” with Detective Moore bears no affinity to the types of juror relationships found prejudicial in Cantrell and its progeny. We, therefore, find no error in the *659 trial court’s refusal of Samudio-Perez’s motion for a mistrial, and we affirm.

Affirmed.

. The jury acquitted Samudio-Perez on a charge of animate object penetration.

. The detective recognized Sorto and wrote a note to the assistant Commonwealth’s attorney, who brought the matter to the judge’s attention.

. Samudio-Perez also asserted Sorto could have been stricken for cause had the relationship come to light during voir dire.

. Samudio-Perez argues the case at bar is governed by the same standards we set forth in Green v. Commonwealth, 26 Va.App. 394, 494 S.E.2d 888 (1998). We find his reliance on Green is misplaced. In Green, the defendant moved for a mistrial based on a juror’s failure to truthfully answer a question during voir dire. Id. at 399, 494 S.E.2d at 890. The court recited the standard of review as follows:
CT]o be entitled to a mistrial for jury misconduct arising from voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.”
Id. at 401, 494 S.E.2d at 891 (emphasis added) (quoting Taylor v. Commonwealth, 25 Va.App. 12, 18, 486 S.E.2d 108, 111 (1997)) (additional citations omitted). Samudio-Perez does not allege juror miscon *655 duct resulting from voir dire; thus, the Green standard is inapplicable. Moreover, even if we were to accept the general principles from Green regarding challenges for cause, the outcome would remain the same. In evaluating both the denial of a mistrial and a refusal to strike a juror for cause, our ultimate inquiry is whether the trial court’s decision prejudiced the defendant. Thus, the result reached in the case at bar would remain the same under both standards.

. The Commonwealth argues Samudio-Perez's reliance on Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000), is barred procedurally because he failed to raise the issue at trial. See Rule 5A:18. This Court recently held, in Patterson v. Commonwealth, 39 Va.App. 658, 576 S.E.2d 222 (2003), that an analysis of "public confidence” is inherent in any appellate review of a juror's impartiality. We assume without deciding that Patterson applies here and consider the issue on the merits.