COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Friedman and Raphael


PAUL LOUIS HERRMANN, S/K/A
  PAUL LOIS HERMANN

v.      Record No. 1714-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JANUARY 30, 2024


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(Todd M. Ritter; Hill & Rainey, on brief), for appellant.

(Jason S. Miyares, Attorney General; Liam A. Curry, Assistant
Attorney General, on brief), for appellee.


Paul Louis Herrmann ("Herrmann") was convicted in the Chesterfield County Circuit

Court ("trial court") on one count of robbery, in violation of Code § 18.2-58. Herrmann asserts

that the trial court erred in finding the evidence sufficient to prove he was the perpetrator. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule

5A:27(a). For the following reasons, we affirm the trial court's judgment.

I. BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting

*Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Doing so requires that we "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On February 2, 2021, Nabila Naseri ("Naseri") was working as the lone cashier at a Shell gas station and convenience store located in Chesterfield County when an unidentified man entered the store. The man, who brandished a large knife, told Naseri "this is a robbery" and "give me all the money." Naseri was then instructed to open the cash register and put all the money in a bag. Frightened, Naseri complied, and the man left with the stolen money. Naseri then contacted the store manager before reporting the robbery to law enforcement.

Chesterfield County Police Officer Jacob Bellamy ("Officer Bellamy") arrived first at the store and asked Naseri for a description of the robber. Naseri was only able to identify him as a masked white male, around 40 or 50 years old who was "short and fat."[1] Officer Bellamy reviewed the store's surveillance video, which depicted a man wearing blue jeans, a two-tone white hoodie with maroon sleeves, and a Champion ball cap. The video showed the suspect entering the store before walking directly behind the counter, speaking to Naseri, and producing a knife.[2] The suspect also wore a blue surgical mask, and his hoodie had an emblem on the left chest area. Officer Bellamy also reviewed video from the cameras surveilling the parking lot, which captured the white male suspect driving away in a black Chevrolet Silverado pickup truck with farm use tags. This video showed the truck also had distinctive chrome sideview mirrors, a spare tire attached to the back of the bed of the truck, and several decals affixed to the left back window. After viewing the video, Officer Bellamy issued a BOLO.[3]

---

[1] The arrest warrant provides that Herrmann is a white male who is five feet, six inches tall, who was born on March 11, 1963, and who weighs 238 pounds.

[2] This video footage was later entered into evidence at trial and played for the jury.

[3] A BOLO is a "be on the lookout" dispatch to police officers with "a description of what the suspect had looked like, if he left on foot or vehicle, [and] the direction of travel."

Chesterfield County Police Officer Jacob Wells ("Officer Wells") was on patrol when he received the BOLO and began searching for the black Chevrolet Silverado pickup truck in an area near the store. Officer Wells had recently seen a black pickup truck meeting the BOLO description located in the parking lot of the InTown Suites at Center State Hotel ("InTown Suites") about a half a mile from the store. He proceeded to InTown Suites where he found a black pickup truck. This truck was not a Chevrolet, unlike the truck in the surveillance video. The officer then exited his police cruiser to approach the truck. An older black male approached Officer Wells claiming that he was the owner of the pickup truck. Since the older black man did not meet the suspect's description relayed in the BOLO, Officer Wells proceeded to the hotel to inquire about the black Chevrolet Silverado pickup truck he had previously seen in the parking lot of the hotel. As a result, the hotel subsequently provided Officer Wells with a copy of Herrmann's DMV transcript showing that Herrmann, who resided at the hotel, did own a Chevrolet Silverado pickup truck with farm use tags. Officer Wells then relayed this information to his fellow officers.

The day after the robbery, Chesterfield County Police Detective Jeffrey Whitlock ("Detective Whitlock") surveilled the InTown Suites's entrance to "get a visual" on Herrmann or his vehicle. Whitlock observed Herrmann leaving the hotel, entering his black Chevrolet pickup truck with farm use tags, and exiting from the parking lot. Whitlock communicated this information to his law enforcement team including Officer Jack Webster ("Officer Webster") who subsequently conducted a traffic stop involving Herrmann's pickup truck. During the traffic stop, Officer Webster confirmed that Herrmann both matched the suspect's description and was wearing black shoes similar to those worn by the suspect. The stickers on the back window of Herrmann's truck also matched the stickers on the suspect's truck used in the robbery. When

pulled over, Herrmann even volunteered that, "whatever I did, I'm sorry." The Chesterfield County police then brought Herrmann in for questioning related to the robbery.

Herrmann subsequently engaged in a videotaped interview at the police station. In this interview, Herrmann, like the suspect, wore a white Champion baseball cap and black "kitchen" shoes. During the recorded interview, Herrmann viewed a still photo from the surveillance footage of the store robbery, and he admitted that the person who robbed the store looked "a lot like" him. Herrmann also admitted that he owned the black Chevrolet Silverado truck, that no one else used the truck in the months leading up to the robbery, and that he was the only person who drove the truck on the date of the robbery.

At trial, Naseri testified to what she experienced during the robbery, but she did not identify Herrmann as the perpetrator. Then Trelaine McGlone ("McGlone"), property manager for the InTown Suites, testified that Herrmann had checked into the hotel in 2017 and that, at the time of the robbery, the hotel was "going through an eviction process with him because he owed a balance to the hotel" of around $2,000. McGlone also confirmed that Herrmann drove a Chevrolet truck with farm use tags and that she had seen him on the day of the robbery wearing jeans and a hoodie. McGlone also testified that Herrmann failed to pay any portion of his $2,000 debt either on the day of the robbery or on the following day.

The Commonwealth introduced the testimony of Forensic Investigator Katherine Chavis ("Chavis") who testified that she recovered evidence from Herrmann's room at the InTown Suites the day after the robbery, including a hoodie identical to the one worn by the robbery suspect, several pieces of mail addressed to Herrmann, and a blue medical mask similar to the one worn by the perpetrator. Chavis also searched Herrmann's truck. She found his vehicle insurance information in the glove compartment and confirmed that the truck was registered to Herrmann. She also documented the number, location, and appearance of the decals on the rear

window of the truck. She found packages of blue face masks similar to the ones used by the robbery suspect, and a standard Virginia license plate was found stored behind the driver's seat. Chavis also testified that she photographed Herrmann's truck which matched nearly every physical characteristic of the robbery suspect's vehicle, including the color, make, model, farm use tags, and chrome side mirrors with a spare tire in the truck's bed.

The Commonwealth played an audio recording at trial for the jury of a roadside interview of Herrmann who, after being read his *Miranda*[4] rights, denied participation in the robbery. In the recording, Herrmann explained that he had recently lost his job as a butcher at a Publix grocery store and was addicted to alcohol, regularly consuming between 30 to 40 beers per day. He also confirmed that he had been living at the InTown Suites for the past three and a half years and was behind on his rent.

During a recess, Juror 124 approached a bailiff and advised that he may know one of the Commonwealth's witnesses—Officer Wells. Outside the presence of the jury, Juror 124 advised the trial judge that he and Officer Wells grew up together and played football for the same team in school. He also stated that they knew each other in elementary and high school but were "never super close." He further stated that they did not socialize and that he had not seen Officer Wells in "over seven or eight years." The trial court permitted further voir dire of the juror beginning with the attorney for the Commonwealth who inquired whether the former relationship with Officer Wells would in any way cause Juror 124 to be biased one way or the other against the defendant or the Commonwealth. Juror 124 answered, "No, sir." The juror also confirmed that he could be "fair and listen to all of the evidence" and follow "the Judge's -- the Court's instructions regarding the law and applying the law to the facts in this case." The juror also said

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he "would not in any way believe that [Officer Wells] is more trustworthy or honest than anyone else."

After both parties completed voir dire of Juror 124, Herrmann objected to Juror 124 remaining on the jury and moved to strike him for cause. The Commonwealth argued in response that the juror's answers on voir dire failed to show any bias or prejudice that indicated that he could not impartially perform his duties as a juror. Finding that the prior relationship between Juror 124 and Officer Wells did not "reach the level that would require this Court to dismiss" Juror 124, the trial court denied the motion to strike Juror 124 for cause.

After the Commonwealth rested its case, Herrmann moved to strike the evidence and argued that the Commonwealth failed to prove that Herrmann committed the robbery. In support of his motion, Herrmann reminded the trial court that Naseri could not identify him as the perpetrator. He also emphasized that the cash, the knife, and the plastic bag used to take the money from the store were never recovered. He further noted the lack of fingerprints, DNA, or a confession. After presenting his evidence, Herrmann renewed his motion to strike, arguing that Officer Wells did not investigate the owner of the first black truck with farm use tags and suggested that the elderly black man who claimed ownership of the truck was likely the true perpetrator of the crime. The trial court denied both motions to strike, and the jury subsequently returned a guilty verdict. Herrmann filed a post-trial motion to set aside the verdict, which the trial court denied. Herrmann appealed from the final order.

## II. ANALYSIS

### A. *Standards of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).  Therefore, we view the evidence "in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Farmer v. Commonwealth*, 61 Va. App. 402, 416 (2013) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)).

Likewise, "a trial court's denial of a motion to strike a juror for cause 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'"  *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005) (quoting *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001)).  The underlying question of juror impartiality is one of fact, and the trial court's determination on the subject is "entitled to great deference on appeal" unless "plainly wrong or unsupported by the record."  *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014).  The reviewing court defers to the "trial court's decision whether to exclude or retain a prospective juror because the trial court 'sees and hears the juror.'"  *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994) (quoting *Eaton v. Commonwealth*, 240 Va. 236, 246 (1990)).  In addressing whether the juror should have been struck for cause, the appellate court must consider

the juror's "entire voir dire, not just isolated portions." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)).

B. *The record contains sufficient evidence to support Herrmann's conviction.*

Herrmann does not deny that a robbery occurred; he merely asserts that the evidence failed to prove he committed the robbery. He further contends that because the evidence failed to rule out his theory that someone else committed the offense, his conviction should be reversed. We disagree.

Robbery is the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Jones v. Commonwealth*, 70 Va. App. 307, 316-17 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275 Va. 510, 524 (2008)). It is well-settled that "the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). However, any element of a crime, including the identity of the suspect, may be proved by "circumstantial evidence." *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). Indeed, "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Taylor v. Commonwealth*, 61 Va. App. 13, 30 (2012) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 258 (2003) (en banc)).

To that end, "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Therefore, identity may be proven when "all the circumstances of time, place, motive, means, opportunity[,] and conduct concur in pointing out the accused as the perpetrator of the crime." *Schlimme v. Commonwealth*, 16 Va. App. 15, 18 (1993) (quoting *Potts v. Commonwealth*, 12 Va. App. 1093, 1097 (1991)). To evaluate "an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine . . . 'whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt.'" *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (second, third, and fourth alterations in original) (quoting *Hudson*, 265 Va. at 513).

Here, the evidence sufficiently supported the jury's finding that Herrmann committed the robbery. First, in viewing the Commonwealth's evidence in the light most favorable to it, we find the video recording in this case establishes that an individual identified as a white male, short in stature and overweight, entered the store, displayed a large knife, and ordered Naseri to put all the money from the cash register into a plastic bag. It also shows the perpetrator then exiting the store, entering a black Chevrolet Silverado pickup truck that displayed farm use tags, and driving the truck away from the store. This truck had a spare tire in the bed and identifiable stickers on the rear window.

The Commonwealth further established that Herrmann's truck was also a black Chevrolet Silverado pickup truck with farm use tags, which was located in close proximity to the location of the robbery. And it showed that Herrmann, "as a white male, short in stature and

overweight," met the robbery suspect's description.  Herrmann conceded that he did not allow anyone to use the truck on the day of the robbery.  Herrmann also frequented the store and lived less than a mile from it.  During his interview, Herrmann wore a baseball cap matching the cap the assailant wore when committing the robbery.  The police found a white hoodie with maroon sleeves and an emblem on it—identical to the hoodie worn by the robber—in Herrmann's room, where he lived alone.  Also in his room was a box of blue surgical masks, the type worn by the perpetrator, and his license plate was stored behind the seat of his truck and replaced with the farm use tags, suggesting that Herrmann hid his license plate for purposes of eluding detection through displaying these tags alone.  When stopped by police, Herrmann did not express surprise or shock and instead directly said, "whatever I did, I am sorry."

Thus, we cannot conclude that the jury was plainly wrong in determining that Herrmann committed the robbery.  The totality of the circumstances proved that he had the opportunity, the motive, the means, the knowledge, and the method necessary to commit the robbery.  In fact, the combined force of the concurrent and related circumstances, along with all reasonable inferences drawn from the proven facts, would lead any reasonable fact finder to conclude beyond a reasonable doubt that Herrmann committed the crime.

Although the knife used by Herrmann and the cash stolen were not recovered, those facts do not alter our analysis.  Herrmann was not detained until the day after the robbery, affording him sufficient time to dispose of both the knife and any cash stolen.  Bearing in mind the evidence pointing to his culpability, Herrmann's denials are unavailing and would lead any reasonable fact finder to conclude that he was "lying to conceal his guilt."  *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).  Moreover, Herrmann's suggestion that the owner of the other black truck parked at the Intown Suites might be the guilty culprit is not born out by the record.  The elderly

black man did not meet the description of the suspect, and the man's pickup truck was not a Silverado. "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Ragland v. Commonwealth*, 67 Va. App. 519, 531 (2017) (quoting *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014)). Hence, based on the voluminous evidence the Commonwealth adduced concerning the robbery and the truck utilized to flee the scene of the robbery, the jury was entitled to disregard Herrmann's hypothesis of innocence and conclude that Herrmann's truck was the very same black Chevrolet Silverado pickup truck that was captured on video immediately following completion of the robbery.

In short, we find that the evidence presented at trial was competent, credible, and sufficient to prove that Herrmann was the white male who entered the store, brandished the knife, and stole the money. Thus, the trial court did not err in finding that the evidence was sufficient to support the conviction.

C. *The trial court did not err in refusing to dismiss Juror 124 for cause.*

Herrmann also contends that the trial court erred in refusing to dismiss Juror 124 for cause after learning that the juror had known Officer Wells. We disagree.

"It is uncontroverted that a criminal defendant has a constitutional right to be tried by an impartial jury." *Goodwin v. Commonwealth*, 71 Va. App. 125, 135 (2019) (citing U.S. Const. amend. VI; Va. Const. art. I, § 8). "This is one of the most fundamental rights afforded by the criminal justice system." *Id.* "In recognition of this bedrock right, the Court has recognized that 'a prospective juror must be able to give [the accused] a fair and impartial trial. Upon this point nothing should be left to inference or doubt.'" *Id.* (alteration in original) (quoting *Scott v. Commonwealth*, 58 Va. App. 265, 270 (2011)). "It is a trial court's responsibility to ensure that jurors are free from bias." *Id.*

Here, after the juror informed the trial court that he had known Officer Wells from elementary school through high school, the trial court permitted the parties to engage in additional voir dire of the juror to determine whether he could be a fair and impartial juror given the nature of the previous relationship. Juror 124 explained that while he and Officer Wells grew up together and played football for the same team in school, they were never close, and they had not seen each other for many years. Juror 124 and Officer Wells did not socialize, and Juror 124 repeatedly stated that his prior relationship with Officer Wells would not cause him to be biased against either the defendant or the Commonwealth. Juror 124 also said he did not consider Officer Wells to be more trustworthy or honest than anyone else. He also insisted that he could be fair, listen to the evidence, and follow the court's instructions regarding the law and its application to the facts.

Thus, the trial court had the "opportunity . . . to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of [Juror 124] first-hand," *Pope v. Commonwealth*, 234 Va. 114, 123-24 (1987), along with his "tenor, tone, and general demeanor," *Telegus v. Commonwealth*, 273 Va. 458, 475 (2007), and was satisfied that Juror 124 could be impartial. A juror's personal knowledge of a witness—with nothing more—is insufficient to impute bias or prejudice. *See, e.g.*, *Perez v. Commonwealth*, 40 Va. App. 648, 656 (2003) ("We have long held that a juror's relationship to a witness does not require his dismissal per se."). Nothing in the record supports the assertion that Juror 124 was "sensible of any bias or prejudice" that might affect his ability to perform his duties as a juror. Code § 8.01-358. Thus, the trial court did not abuse its discretion in refusing to strike Juror 124.

## III. CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in finding the evidence sufficient to support the conviction. We further hold that the trial court did not abuse its discretion in refusing to strike Juror 124 for cause. Thus, we affirm the trial court's judgment.

*Affirmed.*