UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Lorish and Senior Judge Humphreys
Argued at Lexington, Virginia


ROBERT DUSTIN RADFORD

                                   MEMORANDUM OPINION* BY
v.       Record No. 0821-25-3         JUDGE ROBERT J. HUMPHREYS
                                    MARCH 31, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PULASKI COUNTY
Bradley W. Finch, Judge

Elena Kagan, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Austin E. Deramo, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General; Angelique Rogers, Assistant Attorney General, on
brief), for appellee.


A jury convicted Robert Dustin Radford of escaping from the New River Valley

Regional Jail.  On appeal, Radford argues that the trial court erred by denying his motion to

strike a potential juror for cause because the juror's cousin was an employee of the jail at the

time of the alleged offense, and that relationship would impact public confidence in the judicial

process.

BACKGROUND

In March 2024, Radford escaped from New River Valley Regional Jail where he was

incarcerated.  While waiting in a holding cell to be transferred, Radford ran out of the jail when a

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

jail employee left the doors unlocked and open. The police apprehended him approximately one hour later. He was charged with escape.

During voir dire in the ensuing jury trial, the veniremen stated that they had not acquired "any information about this case or any party to this case from the news media or from any other sources whatsoever." Juror B stated that his cousin had worked at the jail for "[a] little over a year now," but that he could be "fair and impartial" despite his cousin's employment. He reaffirmed that he could be "fair and impartial" when Radford asked about the potential jurors' familiarity with jail staff.

When Radford listed the jail employees who were involved in the case no member of the venire, including Juror B, knew any of them. All the veniremen acknowledged that they could "set aside [their] concerns and attitudes on general issues and decide this case independently and solely on the evidence and the instructions" given by the trial court. None agreed that "law enforcement officers generally [do not] make mistakes." Defense counsel declined the opportunity to question Juror B individually, away from the remaining veniremen. No further questions were asked of Juror B regarding his relationship with his cousin.

Radford moved to strike Juror B for cause because "his cousin does work at the . . . [j]ail." The Commonwealth countered that Juror B said he would be fair and impartial without any hesitation, and he also agreed that everyone is presumed innocent until proven guilty. The Commonwealth also argued that it was unknown how close or distant Juror B's cousin was and that, given the size of the county, "it seems like just about everyone's related to someone."

The trial court denied Radford's motion, finding that because this is a "fairly rural jurisdiction" where the jail is a significant employer, it is "not uncommon or unlikely" for someone to have a relative working there. The court also emphasized that it was a cousin, "not a member of

his immediate family." The court found that Juror B "did not express any bias" and he "indicated that he could be fair and impartial and did not [show a] bias [for] either side."

The jury convicted Radford of escape despite Radford's argument that the jail staff's failures were to blame. He argues on appeal that the trial court erred when it denied his motion to strike Juror B. Radford contends generally that Juror B's familial relationship with a member of the jail staff made him biased towards the jail personnel. He asserts that "it was highly likely that [Juror B] had some knowledge of the case, particularly given the . . . media attention surrounding [Radford's] escape, and his close connection to someone who worked at the jail." Radford also argues that the "gross failures" of the jail staff caused the escape; therefore, the public's confidence in the judicial process would be undermined if a relative of a jail employee served on the jury.

ANALYSIS

"The right to an impartial jury is protected by the United States and Virginia Constitutions and by statute." *Keepers v. Commonwealth*, 72 Va. App. 17, 42 (2020) (citing U.S. Const. amend VI; Va. Const. art. 1, § 8; Code §§ 8.01-357 to -58). "[T]he test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995).

Whether to strike a "potential juror for cause . . . is committed to the sound discretion of the trial court." *Grimaldo v. Commonwealth*, 82 Va. App. 304, 315 (2024) (alteration in original) (quoting *Warren v. Commonwealth*, 76 Va. App. 788, 799 (2023)). Indeed, because the trial court is "able to see and hear each member of the venire respond to questions posed" it "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror." *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005)). Thus, we "must defer to a trial court's ruling, and the decision to retain or exclude a

- 3 -

prospective juror for cause 'will not be disturbed on appeal unless there has been a manifest error amounting to an abuse of discretion.'" *Grimaldo*, 82 Va. App. at 315 (quoting *Huguely*, 63 Va. App. at 121).

## I.  *Striking Juror B due to bias*

Generally, a juror is free from exception provided he "stand[s] indifferent in the cause." Code § 8.01-358.  If the juror "has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice," he should be struck for cause.  *Townsend*, 270 Va. at 330-31 (quoting *Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)). But a juror is not per se disqualified due to familial relations to witnesses or law enforcement "provided the juror has no knowledge of the facts of the case and demonstrates impartiality toward the parties."  *Clozza v. Commonwealth*, 228 Va. 124, 129 (1984).  Moreover, when determining whether the prospective juror should have been excluded, the Court must consider the "entire voir dire, not just isolated portions."  *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006).

Radford relies heavily on *Roberts v. CSX Transportation, Inc.*, 279 Va. 111, 118 (2010), to argue that even when a juror states his ability and willingness to be impartial and fair, the court should strike the juror when there is any obvious bias.  *Roberts*, however, addressed per se disqualification of jurors who were stockholders in companies that were parties to the case.  279 Va. at 116, 118.  It does not hold that a juror is per se disqualified due to familial relations to law enforcement.  *Clozza*, 228 Va. at 129; *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001).

We have held that a trial court did not abuse its discretion when it declined to strike a juror whose nephew and cousin's daughter were prosecution witnesses because she confirmed that she could set aside her relationships and impartially evaluate their testimony, that she had no preconceived notions regarding the witnesses' truthfulness, and that she could be fair to both sides. *Mayfield v. Commonwealth*, 59 Va. App. 839, 847-48 (2012).  We have also held that a juror

employed by a business that is negatively implicated in a case does not require the trial court to strike the juror for bias when the record indicated the juror could be impartial and indifferent. *Huguely*, 63 Va. App. at 125-26. In *Huguely*, the defendant charged with murder was a student at the University of Virginia and the challenged juror worked at the university. *Id.* at 125. Huguely argued that the juror would be biased because Huguely's case placed the university in a "bad light" but the juror said that he could fairly examine the evidence and return a not guilty verdict if the evidence so required. *Id.* at 124-26.

Similarly, we conclude that the trial court did not abuse its discretion by denying Radford's motion to strike because Juror B gave no reason to doubt his ability to be fair and impartial. Although his cousin worked at the jail, no questions were asked regarding the closeness of Juror B's relationship with his cousin, the cousin was not a witness in the case, and Juror B gave no indication that he was biased in favor of jail personnel or the prosecution. Rather, he stated he had no knowledge of the case and twice affirmed that he could be fair and impartial. He promised to "set aside [his] concerns and attitudes on general issues and decide this case independently and solely on the evidence and the instructions as the [trial court gave] them." He also acknowledged that law enforcement officers can sometimes make mistakes. Moreover, there is no evidence that Juror B "had some knowledge of the case" because of his "connection to someone who worked at the jail" as Radford claims. To the contrary, Juror B stated that he had not acquired any information about the case, either through media reports or from any other source. In short, the only information in this record suggesting bias by Juror B was that he had "a cousin" who worked at the jail in an unknown capacity. Given the above, the record fails to demonstrate that Juror B harbored any bias.

II. *Striking Juror B to maintain public confidence in the judicial process*

The Supreme Court of Virginia has recognized an exception to the general rules of impartiality in cases where the juror's participation in the case might undermine public confidence

in the judicial process. *Barrett*, 262 Va. at 826-27; *Medici v. Commonwealth*, 260 Va. 223, 227 (2000); *Cantrell v. Crews*, 259 Va. 47, 51 (2000). Radford argues on appeal that his objection to seating juror B on the general assertion that Juror B's "close relationship" to the jail was problematic raises the issue that seating Juror B undermined public confidence in the judicial process. Assuming without deciding that Radford has properly preserved this issue for appeal, we conclude that this argument is equally unavailing.

Radford argues that the trial court should have struck Juror B because the public probably would not have confidence in the judicial process given his contention that he escaped because of the jail staff's failures.

Radford's argument is not supported by the record. Generally, where there is a contemporaneous and continuing relationship with *legal counsel* or a *witness*, a juror should be struck for cause because the public would not likely have confidence in the judicial process in that circumstance. *Perez v. Commonwealth*, 40 Va. App. 648, 658 (2003). But we have also held that a juror need not be recused under the public confidence standard when he had a past but no ongoing relationship with a witness. *Id.* at 658-59.

A juror should not be seated under the public confidence standard when the juror has an ongoing relationship with parties whose character and honesty are being evaluated by the jury. *Barrett*, 262 Va. at 826-27; *Medici*, 260 Va. at 227; *Cantrell*, 259 Va. at 51. In *Cantrell*, the juror was a client of the law firm representing one of the parties at trial. 259 Va. at 51. In *Medici*, the juror's husband had been murdered, and the accused was represented by the same public defender who was representing the defendant. 260 Va. at 227. And in *Barrett*, the juror was the brother of one of the police officers who was a witness. 262 Va. App. at 658-59.

Juror B's cousin was neither a witness in the case nor counsel to either party and Juror B denied having a relationship with or knowledge of the jail employees who were implicated in the

case. Radford argues that Juror B should have been struck because of his familial connection without demonstrating that Juror B and his cousin maintain a close and ongoing relationship. Without that evidence, the record fails to demonstrate that Juror B's connection to the jail is an issue that jeopardizes the public confidence in the judicial process. Thus, the trial court did not abuse its discretion when it denied Radford's motion to strike for bias because there is no evidence of manifest error.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*